IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

ALUMINUM BAHRAIN B.S.C.

                    Plaintiff

            vs.                      Civil Action No. 08-299

ALCOA, INC.,
ALCOA WORLD ALUMINA LLC,
WILLIAM RICE and VICTOR DAHDALEH
                    Defendants
_____

PROCEEDINGS

    Transcript of STATUS CONFERENCE on THURSDAY, NOVEMBER 3,
2011, United States District Court, Pittsburgh, Pennsylvania,
before Honorable DONETTA AMBROSE, Senior U.S. District Judge.

APPEARANCES:

For the Plaintiff:    MARK MacDOUGALL, ESQ.
                      CHARLES GIBBONS, ESQ.
                      LAUREN KERWIN, ESQ.

For the Defendant ALCOA:
                      EVAN CHESLER, ESQ.
                      ANDREW STANTON, ESQ.
                      STEPHEN KAUFMAN, ESQ.
                      NICHOLAS DeROMA, ESQ.

For the Defendant RICE:
                      ASHLEY BAILEY, ESQ.
                      RICHARD BEIZER, ESQ.


For the Defendant DAHDALEH:
                      DAVID ESSEKS, ESQ.
                      WALTER DeFOREST, ESQ.

For the Government: ADAM SAFWAT, ESQ.

Reported by:

                             Patricia Sherman
                             Official Court Reporter
                             Room 5300 USPO & Courthouse
                             Pittsburgh, Pennsylvania 15219
                             (412) 281-6855

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

<u>P R O C E E D I N G S</u>

1

2          THE COURT:  Sorry to keep you waiting.

3          We are here this afternoon in the case of Aluminum

4   Bahrain B.S.C. against Alcoa, Inc., Alcoa World Alumina, LLC,

5   William Rice and Victor Dahdaleh at No. 8-299.

6          We're here particularly because the defendants

7   Alcoa, Inc., Alcoa World Alumina, LLC, and William Rice have

8   filed a motion for this conference.

9          I have received sufficient papers from all parties,

10  including the government, and the government is here --

11  Mr. Safwat, are you here?

12          MR. SAFWAT:  Yes.

13          THE COURT:  The only thing, if you're speaking this

14  afternoon, because we have so many people here, I would

15  appreciate your identifying yourself before you do speak so

16  the court reporter can know who is saying what.

17          So, I have -- I know what the motion is.  Of course,

18  the motion is to reopen this case and get it moving because

19  Alcoa would like to file a motion to dismiss.  I do know that

20  this case was stayed at the request of the plaintiffs and the

21  government sometime ago because of the investigation.

22          But I also know it's been three and a half years now

23  and I'm on my last legs here at the job.  So, I don't know

24  what is going to be happening.  I don't know who it makes

25  sense wants to talk.  We all know what Alcoa wants.  I think

1    we also know what Aluminum Bahrain wants as well because they

2    are willing, I believe, to file a RICO case statement and to

3    have the case proceed in whatever way it's going to proceed.

4            It's the government, I think, that's the party, even

5    though you really aren't a party, holding up everything here.

6            Mr. Safwat, do you want to speak first or not?

7            MR. SAFWAT:  Yes, Your Honor.  Do you want me to

8    come up to the podium?

9            THE COURT:  No.  Wherever you're comfortable.  If

10   you want to come to the podium, you may.

11           MR. SAFWAT:  I'm not sure it's working.  So, maybe

12   I'll come up.  I don't know how far my voice will carry.

13           Your Honor, Adam Safwat with the Criminal Division

14   of the U.S. Department of Justice on behalf of the intervenor,

15   the United States.

16           Your Honor, I understand the Court's concern.  It

17   certainly has been a long time, and I'd like to address the

18   reasons for the length of the investigation, and I'd like to

19   very briefly address some other factors that I think would

20   weigh into the Court's consideration of whether to continue

21   the stay.

22           If I may, I'll start by addressing some of the

23   reasons for the length of this investigation.  As Your Honor

24   is aware, the government has an ongoing FCP investigation into

25   violations of the federal criminal laws that substantially

1    overlap the allegations in this matter, and Your Honor, this
2    has been a complex investigation.
3           One of the reasons that this investigation has taken
4    a significant period of time is because the conduct that we
5    are investigating in this international corruption scheme
6    spans the globe from the United States to Australia, to the
7    Channel Islands in Europe and to Bahrain.  We, therefore, have
8    had to use and have been using formal and informal channels to
9    acquire evidence from overseas.
10          Certain categories of evidence that are critical to
11   this investigation are only available to us through formal
12   evidence, and in particular, Your Honor, I'm referring to bank
13   records.  Often in the host country, the account holder has an
14   opportunity to object and receive a hearing before a tribunal.
15   That has caused significant delay in the investigation that is
16   beyond our control.  But let me assure Your Honor, we have,
17   nevertheless, through the cooperation of our international law
18   enforcement partners been getting significant evidence through
19   these formal channels.
20          In addition, Your Honor, we have also sought witness
21   statements and documents from different countries.  We are
22   still seeking additional important evidence, but that is
23   probably the biggest reason that these types of foreign
24   corrupt practice investigations take so long.
25          The bank records are critical because the scheme

1    usually involves routing money through layers upon layers of

2    bank records, and we have to go from one layer to the next.

3    I'm not asking the Court to wait until we accomplish all of

4    that but that's one of the elements.

5           The other element, obviously, is our ability to

6    approach witnesses overseas.  This is where I'd like to

7    address some other factors that I think weigh in favor of

8    continuing the stay.

9           The investigation is now at a sensitive stage, and

10   mindful that I'm in open court, Your Honor, I will be ginger

11   with my words, but of course, if the Court wants any further

12   specificity, I'm prepared to provide that either under seal or

13   ex parte.

14          At this point of the investigation, it's fair to say

15   we are at a more advanced stage of the investigation.  The

16   evidence that we have seen certainly implicates numerous

17   United States laws.  The evidence also indicates that the

18   United States' law enforcement interests here are substantial.

19   At the same time, if the RICO statement would be -- if the

20   plaintiff was required to file the RICO statement, there are

21   certain interrogatory-type questions in that statement which

22   we have significant concern about.

23          In particular, Your Honor, we have concern that

24   witnesses may be harassed or intimidated because the RICO

25   statement would likely disclose some of those statements.  We

1  understand that Alba has been conducting its own

2  investigation, using its own investigators, and has been also,

3  we understand, working with other law enforcement agencies.

4  In that regard, Your Honor, it is our belief, though I

5  certainly don't know everything that Alba has, far from it,

6  but it is our belief that they are in possession of some very

7  sensitive witness statements.

8        Our genuine concern regarding the premature

9  disclosure of such information would be about both the

10  intimidation, security of overseas witnesses, as well as about

11  their continued willingness to cooperate with us.

12        There, obviously, would be other potential

13  collateral consequences to our investigation given where we

14  are right now.

15        THE COURT:  So, you're saying that witnesses that

16  Alba has already contacted and they may have given them

17  statements, if these were exposed in a RICO case statement,

18  these people would be subjected to intimidation and

19  harassment; is that what you're saying?

20        MR. SAFWAT:  I'm not saying that would definitely

21  happen, but I think it is a legitimate concern, particularly

22  since some witnesses reside in areas that are of different

23  legal regimes than here, Your Honor.

24        I'm aware that they also have information that they

25  may not have necessarily acquired from a witness but may feel

1    compelled to disclose because it's in their possession as part

2    of the RICO statement.

3            THE COURT:  And they need to worry about surviving a

4    motion to dismiss.

5            MR. SAFWAT:  Exactly.  Exactly.

6            To that concern, Your Honor, I'd be prepared to

7    provide very specific information, but I would have to do so

8    ex parte, if Your Honor wanted to go that route.

9            THE COURT:  So, when do you see this investigation

10   wrapping up?

11           MR. SAFWAT:  Your Honor, I think --

12           THE COURT:  Or at least getting to the point where

13   you no longer have the same concerns you have today.

14           MR. SAFWAT:  Your Honor, I think that those concerns

15   would dissipate at the time of a potential indictment.

16   Certainly, I'm not going to sit here in open court and suggest

17   that we will or will not indict anybody but that would be the

18   natural conclusion.

19           And I think that the government, having now acquired

20   significant evidence from overseas, is working very hard to

21   analyze that evidence, spend substantial -- and we are

22   spending significant resources to try to analyze all the

23   evidence we're getting from overseas.  And I foresee that we

24   will be sometime next year, in the next six to eight months,

25   at a position where --

1    THE COURT:  To indict, if you're going or not

2 indict.

3    MR. SAFWAT:  To make charging decisions, absolutely,

4 Your Honor.  At that point in time, I think it would be

5 appropriate to revisit the stay because at that point, we may

6 be amenable to a complete lifting of the stay or we may want

7 to come back to the Court and say we would like a partial stay

8 of certain types of discovery.

9    But I certainly think that the horizon -- the end is

10 on the horizon, Your Honor.

11    THE COURT:  Well, I read the newspapers and I know

12 that there were arrests outside of the country.

13    MR. SAFWAT:  Correct, Your Honor.

14    THE COURT:  So, I would think that maybe at some

15 point, you're saying in six to eight years -- six to eight

16 months.

17    MR. SAFWAT:  I won't be standing in six to eight

18 years.

19    THE COURT:  That the government will either indict

20 or not indict.

21    MR. SAFWAT:  I think that is fair, Your Honor.  At

22 some point in time, we will be making those charging

23 decisions.  It will be sooner rather than later.  Therefore,

24 that is why, given the critical nature of this investigation,

25 given some of the difficulties we are facing in terms of

1  acquiring information from the sources overseas, because those

2  persons are concerned about being publicly revealed as sources

3  of information, I would ask the Court to continue the stay at

4  least through another six months, Your Honor.

5        I think that, overall, given the substantial

6  interests of the public in the enforcement of the anti-

7  corruption laws against international bribery as well as the

8  resources expended and the substantial interests of the

9  government at stake in this investigation, that the equities

10  weigh in favor of the government as opposed to the private

11  litigants.

12        The only thing that has happened here is that there

13  has been the filing of a single complaint.  I appreciate that

14  at some point the defendants want to have their civil

15  liability resolved.  I think that, on the whole, asking them

16  to wait a few more months in this matter is not a great

17  sacrifice for them compared to the potential injury to the

18  government's very important Foreign Corrupt Practices Act

19  investigation.  Thank you, Your Honor.

20        THE COURT:  Thank you.  Who wants to speak next?

21  You certainly may, sir.  You are?

22        MR. CHESLER:  Evan Chesler, Your Honor, for Alcoa.

23        Good afternoon, Your Honor.

24        THE COURT:  Good afternoon.

25        MR. CHESLER:  Your Honor, we are here, as you know,

1  to ask for a limited lifting of the stay.  We did not ask for

2  a general lifting.  We asked for a lifting for two specific

3  purposes, to get a RICO statement and to move to dismiss.

4        As I understand the government's position, and I did

5  not hear Mr. Safwat change it, they have no objection to our

6  moving to dismiss.  They have an objection to our receiving a

7  RICO statement.

8        The order that Your Honor entered three and a half

9  years ago, consistent with the local rule, said that we were

10  entitled to a RICO statement to provide the facts that

11  supported the initiation of the complaint.  That was the order

12  in effect at the time the government asked for a stay.

13  Presumably, whatever those facts are, Alba had them in their

14  possession when they initiated the complaint three and a half

15  years ago.  We believe we're entitled to those obviously

16  weighed against the points that Mr. Safwat made about whether

17  the Court should lift the stay or not.

18        So, I want to turn to the question of whether or not

19  there is an appropriate basis for the Court to lift the stay

20  for the limited purpose of getting a RICO statement pursuant

21  to the local rules that would provide the facts on which Alba

22  relied for the initiation of the complaint so that we could

23  move against it.  Mr. Safwat has told us that a RICO statement

24  would prejudice the government's investigation.

25        I respectfully submit to Your Honor that there is

1   simply no way that Mr. Safwat could know that unless he's seen

2   a draft of the RICO statement, and I assume he hasn't, and we

3   certainly haven't.  The government is saying that they think

4   it would be prejudicial to their investigation based upon

5   their surmise of things that Alba knows through its own

6   investigation, not presumably through the government's

7   investigation, because it is our understanding that Alba --

8   that the government is not sharing its information with Alba.

9          So, we have the question of whether facts known to a

10  private plaintiff, determined or obtained through the

11  investigative efforts of that private plaintiff, which the law

12  entitles us to have to show the facts on which they relied to

13  initiate their complaint, which have not presumably been

14  disclosed to the government, can form the basis for the

15  government to stand before Your Honor and tell you that they

16  know it will prejudice their investigation.  I would submit,

17  Your Honor, they can't know that.  They don't know that.

18         In the meantime, our rights, the rights of an

19  American corporation before the U.S. District Court, are being

20  significantly compromised.  Every day, every day we are being

21  chastised in the press.  Alba is apparently leaking

22  information to the press daily because we're not telling them.

23  The government has assured us they are not telling them.  Yet,

24  the Wall Street Journal said its been given documents,

25  internal e-mails, Alba e-mails, Alcoa e-mails.  We're bound

1    and gagged, effectively, because we're not going to try our
2    defense in the press.  We want to present it to Your Honor.
3    So, we're sitting here, effectively, with a gag over our
4    mouths while Alba talks to the Wall Street Journal and the
5    press.  The Supreme Court has announced what the law is and
6    what the jurisdictional limits reach of the RICO statute are,
7    and we're not permitted to come for the limited purpose and
8    test that.

9         Now, the government says another six to eight
10   months.  We have sat patiently for three and a half years.
11   We've been repeatedly assured that the investigation will be
12   over soon.  It hasn't been over.  It is not over.  I'm sure
13   Mr. Safwat would not tell you, and he hasn't told you, that
14   he's certain it will be over.  They face all sorts of
15   obstacles around the world, foreign governments and foreign
16   courts, et cetera, getting information as he's described.

17        So, what I would respectfully ask the Court to do,
18   to balance these competing interests, is to have Alba submit
19   its RICO statement under seal for a limited period of time,
20   whatever period of time the Court decides in its discretion it
21   should be, for the purpose of letting Mr. Safwat and his team
22   at the DOJ look at it.  And instead of speculating that the
23   government's investigation would be prejudiced and having that
24   speculation weigh against our real prejudice, let them look at
25   what is actually in the statement, the facts on which Alba

1   represents it relied to initiate its complaint which is what

2   the law requires.  And if the government believes there is

3   anything in there that hasn't already been put out in the

4   press by the SFO in England or by the leaks to the Wall Street

5   Journal or by the voluminous complaint against which we wish

6   to move that's been on the public record for three and a half

7   years, or against anything else that is already in the public

8   record, the government can make an application selectively to

9   redact the document so that the vast preponderance of it will

10  be in the public record and only that which would genuinely,

11  in the government's view, prejudice their investigation would

12  presumably be the subject of an application to seal.  And I'm

13  sure Your Honor will keep in mind, the entire complaint that's

14  been out there for three and a half years can't be the subject

15  of that application.  It's only that portion of the

16  incremental material that would be in a RICO statement that

17  hasn't already been placed in the public record.  Some subset

18  of that, presumably, is what the government's concerned about

19  and speculating about.  They could submit that to Your Honor

20  and ask that it be redacted.  Our motion, I assure Your Honor,

21  will faithfully abide by whatever those redactions are.  So

22  that nothing in our motion would be put into the public record

23  that isn't consistent with that redaction.

24          We can then have our day in court and not have to

25  watch this case tried in the press every day without any

1    recourse, and the government's investigation, for whatever
2    period of time Mr. Safwat ultimately needs to protect it, will
3    remain protected.
4            Now, the suggestion that witnesses will be harassed
5    and intimidated by Alcoa, I don't think counsel intended to
6    suggest that, and I can assure the Court the Aluminum Company
7    of America isn't going to intimidate or harass anyone
8    anywhere, let alone witnesses in the Middle East.  So, I'm not
9    sure who would be harassed or intimidated if, in fact, there
10   were reasonable --
11           THE COURT:  Well, he referred to other legal systems
12   and governments that are not the same as ours.  I think that's
13   what he's talking about.
14           MR. CHESLER:  Your Honor, and I would submit to you
15   that if we follow the course that I'm respectfully suggesting
16   to the Court, that becomes a non-issue.
17           THE COURT:  Well, the only thing that concerns me
18   about that, I mean, I think it might not be a bad idea for me
19   to look at a proposed RICO statement ex parte, in camera, and
20   maybe the kind of information that Mr. Safwat was talking
21   about, the additional information.  But what concerns me is,
22   you know, if what is redacted is necessary to the claim of
23   Alba, that's important.  So, I mean, I'm not sure that solves
24   the problem.  If there are sensitive matters that maybe we can
25   all agree should be redacted, how does that affect their claim

1    and their ability to withstand the motion to dismiss.

2             MR. CHESLER:  Well, if I may respond, Your Honor.

3    Presumably, there will be two versions of these papers.  There

4    will be the unexpurgated version which Your Honor will have

5    and whichever universe of party or counsel only that are

6    permitted to see and would see.

7             And there will then be the redacted public version

8    which would be benign in these terms.  That is, it would have

9    been redacted by definition that which the Court agrees should

10   be redacted in order to address the government's interests.

11            Alba will have the unredacted version.  We will have

12   the unredacted version.  Our motion will address the claim in

13   its holistic state.  We will submit it to the Court in camera

14   so it can be selectively redacted.  Alba can respond with

15   respect to the universe of facts on which it relies.  If we

16   are right, Your Honor, and we believe we are, that under the

17   Morrison case and its progeny, which have been decided since,

18   this case cannot withstand a Morrison motion, then Alba's

19   interest in prosecuting its claim will be moot.

20            THE COURT:  I suspect Alba has a different view of

21   that.

22            MR. CHESLER:  I'm sure they do but Your Honor will

23   have the facts.

24            THE COURT:  I will.

25            MR. CHESLER:  We will have the facts and they will

1   have the facts.  If Your Honor decides that, based upon that

2   submission and our motion and their response to it, that we're

3   mistaken or that we fall short of that line, then we -- the

4   stay is then remaining in effect.  We're not asking to

5   litigate the case.  We're asking for a limited purpose to get

6   a RICO statement and move to dismiss.  If we win the motion,

7   the case is over.  If we lose the motion, the stay is still in

8   effect.

9          So, I would submit to Your Honor, they are not being

10  prejudiced at all by this.  We all will have the facts.  We

11  get our chance to make our motion, too.

12         THE COURT:  I understand your comments about that

13  and I think that I can understand why you would think that.  I

14  am philosophically averse to this kind of sealing and

15  redaction and route.  That is something that concerns me, I

16  have to say.

17         I know what you're saying, but anyway, that's my

18  bent.

19         MR. CHESLER:  I understand, Your Honor.  I hear you.

20  May I make one last point and then I'll sit down.

21         THE COURT:  Surely.

22         MR. CHESLER:  Because it goes to the prejudice

23  point. The prejudice is not only, although significant, not

24  only the public rehearsing of all of this with us unable to do

25  anything about it.  There is another quite profound prejudice

1  which I think is quite important and I want to bring it to the
2  Court's attention.

3          Without going into any of the details of discussions
4  between us and the government, I can, I think, appropriately
5  say this.

6          The government, as I'm sure Your Honor knows, has
7  views about what constitutes cooperation by a party that is
8  being investigated and what doesn't.  And whether we are
9  willing to sit down and talk to the government and make
10 efforts to resolve things is a positive thing that weighs in
11 your favor or not.  And we find ourselves, Your Honor, in a
12 very, very difficult situation.  That is to say, the
13 government and Alba, separately, a separate party, with whom
14 we have to deal, and if this stay remains in effect, as
15 Mr. Safwat has suggested, until the government is in a
16 position to indict or not, then we are and will remain in a
17 situation in which the price of sitting down and talking to
18 the government and coming to a resolution is to put my client
19 in a position where the facts that the government would
20 contend we must adhere to or consent to would essentially
21 track the Alba cause of action in this case, in a treble
22 damage RICO case, that we don't believe should be here to
23 begin with.

24         So, we not only have the prejudice of the public
25 statements, but we are between the government's investigation

1    and their desire to have us sit down and talk to them as a

2    "cooperating party" and a treble damage RICO case.  We believe

3    that that is an invented conundrum because the RICO case

4    should not be here under Morrison and that's why we come back

5    in the wake of Morrison.  If Your Honor continues the stay

6    until the government is in a position to say they are going to

7    indict or not, we can't extricate ourselves from that

8    position.  And I would submit to Your Honor that that,

9    balanced against the minimal prejudice, minimal, of asking

10   Your Honor to look at a RICO statement to decide whether there

11   is a basis to compromise this by limited redactions, weighs

12   heavily in our favor because we can't fix that problem.

13          THE COURT:  I understand that there has been a lot

14   of recent publicity again after the arrest.  I understand

15   that.

16          But why now?  When, you know, why now as opposed to

17   six months from now?  Just why not six months ago?  Why now?

18          MR. CHESLER:  Six months ago, we were, in fact,

19   preparing to make this exact application.

20          THE COURT:  But you didn't.

21          MR. CHESLER:  Because Alba and our client began to

22   engage in discussions which, had they been successful, would

23   have mooted our need to be here today.

24          THE COURT:  Six months ago, you started having these

25   discussions?

1          MR. CHESLER:  About four or five months ago, yes,

2    Your Honor.  If I'm a little wrong on the time, I'm sure

3    Mr. MacDougall can correct me.  I've not been in any of the

4    meetings.  I've not participated in them but I've had reports

5    of discussions back and forth, and there were events leading

6    up to those first meetings which covers the period of the last

7    several months.

8          So, we stood down because, obviously, if our client

9    was able to resolve this, there was no reason to trouble the

10   Court.  So, that's why not some months ago.

11         What's the difference between today and some months

12   from today?  We will be in precisely the same position we are

13   today except worse because then we will not have engaged with

14   the government in a way that the government is wishing us to

15   engage in because of this stay remaining in effect.  We'll be

16   six months further down the road, and the government may then

17   be saying, well, we are in a position now of wanting to ask

18   for indictments of somebody or some thing.  We still are in a

19   situation where we haven't been able to address the RICO case

20   on what we believe are very solid grounds which would moot the

21   conundrum that we're in.  It's only the government's

22   conjecture that a statement they haven't seen yet will

23   prejudice them that keeps us in that bucket.  I would submit

24   to Your Honor that's just not fair.  We've come here to get

25   our rights back.

1          THE COURT:  Why don't I hear from Alba.

2          MR. CHESLER:  Thank you.

3          THE COURT:  Thank you, Mr. Chesler.

4          MR. MacDOUGALL:  Good afternoon, Your Honor.  Mark

5   MacDougall for Aluminum Bahrain and Alba.

6          If I could correct one thing.  As Your Honor, when

7   you began this proceeding, you noted that the Department of

8   Justice and Alba had both asked for the stay.  I think that

9   was slightly incorrect.  I think we did not object to it.  We

10  are not the moving party.

11         THE COURT:  All right.

12         MR. MacDOUGALL:  With regard to Mr. Chesler's

13  reference to recent settlement discussions, it wasn't six

14  months ago.  It wasn't three months ago.  It was two months

15  ago.  It was the end of September, and I was there, and

16  Mr. DeRoma, the general counsel who sits with Mr. Chesler was

17  there and he knows that.  It was very recent.

18         The Court asked, I think, the critical question here

19  and I would ask the Court to consider carefully why now.

20         I think the answer to why now is that there were

21  arrests made last week.  One of the defendants in this case

22  and the former CEO of Alba were arrested by the British

23  government.  The former CEO of Alba is being held in Australia

24  pending extradition without bail.  This case is not frivolous,

25  Your Honor.  This case is very serious and it's being treated

1  that way by not just the Department of Justice but other law

2  enforcement agencies.

3          One other fact, Your Honor, and I don't mean to

4  speak for Mr. Safwat, but if the Court will indulge me, I

5  will.  This case is not -- the civil case is not a case that

6  is piggybacking on the government.  In fact, the government,

7  the U.S. government, the British government, and in fact,

8  other agencies that Mr. Safwat alluded to didn't know about

9  this conduct and the underlying case until the civil case was

10  brought.  It was only after that that they became aware of it.

11  The reason I mention that, Your Honor, is that has a lot to do

12  with how much time has gone by.  As the Court is well aware,

13  criminal investigations go on under the radar for a long

14  period of time before they come out into the open.  This case

15  didn't have that benefit and didn't have the opportunity.

16          The equivalent of the first referral showing up was

17  the day we filed our lawsuit.  So, I would respectfully

18  suggest the Court give the Department of Justice a little bit

19  of running room on that issue.

20          We have not been idle, Your Honor, in the

21  intervening three and a half years.  We have identified

22  additional witnesses.  We have identified additional

23  transactions.  We have identified conduct that happened right

24  on Isabella Street in the city.  We believe that that

25  information, that evidence, is critical to our case.  If the

1    Court does lift the stay, we will move the Court to amend our
2    complaint in a very broad and detailed fashion.  If the Court
3    asks us to submit a RICO statement, we will certainly do so,
4    but it will be very detailed because, as the Court suggested
5    it has to be, because were defending an aggressive motion to
6    dismiss.

7           And on the question of seal, Your Honor, if I may,
8    this case was brought by some very courageous people in a
9    country that we've all read about in the paper lately.  And
10   there have been numerous efforts at witness intimidation, and
11   I'm not here to suggest it's been by Alcoa or anyone else, I'm
12   not saying that, but we have received numerous reports, law
13   enforcement agencies in Bahrain have been involved.  People
14   who have come forward and have told their story to us and
15   perhaps to other agencies have been at risk.  We would be
16   compelled in making a RICO submission to this Court to give
17   you, give the Court, as much detail as we could.

18          With respect to the suggestion of some secret
19   proceedings under seal, the reason that this company, Alba,
20   and the people associated with it, had the courage to come to
21   the United States is that it is transparent.  It's one of the
22   very few places in the world that is.  They understood that
23   there was not going to be secret proceedings or anything
24   hidden and we told them that.  We told them that's a two-way
25   street, and they thought about it for a long time, and they

1    said no, we're willing to take that risk.  We're willing to do

2    it.  So, I would urge the Court not to entertain any

3    suggestion by Alcoa that we entered into some kind of

4    complicated secret process.

5         Six months is not a long time.  42 months have gone

6    by.  We are prepared, however, Your Honor, to move forward.  I

7    don't want to suggest otherwise.  We are not hiding behind the

8    government's cloak.  We are prepared to move forward but we're

9    going to do it with evidence and with facts and with a great

10   deal of information that we have developed in the intervening

11   three and a half years.

12        There are activities going on.  I was in London on

13   Monday and present for the bail hearing of Mr. Dahdaleh.

14   There are other defendants in this case who are facing very

15   serious, I suspect, criminal prosecution, criminal risk.

16   They, too, would have access to this information.  That

17   creates an entirely different dynamic that I would

18   respectfully suggest the Court should carefully consider in

19   weighing Mr. Safwat's motion.  Thank you, Your Honor.

20        THE COURT:  Mr. Chesler, do you want to say

21   something?

22        MR. CHESLER:  Yes. very briefly.  Just three points,

23   Your Honor.

24        No. 1, as I believe Mr. Safwat will confirm, I told

25   him months before the recent arrests that we were preparing

1    this application, and we began discussing whether the

2    government would or would not consent to it.  So,

3    Mr. MacDougall's suggestion that why we're here today has

4    anything to do with arrests is just not supported by facts.  I

5    believe Mr. Safwat will confirm that.

6            The reason we did not move before was exactly the

7    reason I told Your Honor, and the fact that the actual

8    meetings between the clients started in September is not the

9    point.  The point is that there were developments going on for

10   quite sometime before that which caused our client to tell us

11   do not go in and ask for the application because we believe

12   that, through various channels, there will be discussions

13   which ultimately did come to fruition and took place both in

14   the Middle East and in London in the last eight weeks or so

15   which led -- which came from events that took place before

16   that which is why we were instructed to stand down from this

17   application.

18           But in fact, before we were instructed to stand

19   down, I had already told Mr. Safwat at the DOJ that we were

20   preparing this application and he'll confirm that.

21           Lastly, Your Honor, with respect to this issue,

22   again, about the safety of witnesses.  No one on our side, I'm

23   sure Your Honor would appreciate, wants to put anyone in any

24   kind of jeopardy.  That's not our suggestion.

25           I would just urge Your Honor to consider the

1   possibility of looking at what Alba's statement would say and

2   making that determination and couching it in words like secret

3   proceedings and it's contrary to the transparency of the U.S.

4   justice system, allowing defendants to have their day in court

5   and be heard where they believe they're subjected to very,

6   very serious allegations and litigation that are unfounded as

7   a matter of law is also a feature of our justice system.

8          What we're asking the Court, respectfully, to do is

9   to balance these competing interests.  No one needs to be put

10  in harm's way.  By the way, all of whoever these people are

11  are going to be publicly identified presumably when the

12  government and Alba files these other complaints later.  And I

13  don't think there is a moratorium on intimidation or

14  harassment and whoever those people are are not going to be a

15  danger to those people then as opposed to now.  We are

16  suggesting a procedure that would protect those people for the

17  time being.  Once this all becomes a matter of public record

18  later, they're going to have that problem anyway and it's not

19  of our making.

20         So, I urge Your Honor, please, let us have our day

21  in court.  Let us submit this to Your Honor, and more

22  importantly, let them submit to Your Honor in camera first

23  what it is we'd be shooting at because without that, we're

24  never going to get ourselves out of the predicament we're in

25  and that's simply unfair to us.  Thank you, Your Honor.

1        THE COURT:  Anybody else?

2        MR. SAFWAT:  May I respond very briefly?

3        THE COURT:  Surely.

4        MR. SAFWAT:  Your Honor, on the question of witness

5    safety, I have personally sat in the room with some of these

6    witnesses, and they have told us of their great concern if it

7    would be publicly revealed that they had been talking to us.

8    Some of them are, frankly, terrified.  While Mr. Chesler is

9    correct that, at some point, it may all be revealed.  We have

10   advised their counsel that we will, of course, before that

11   point in time comes, take all appropriate measures to inform

12   their counsel and work with their counsel to do whatever we

13   can do to help insure their safety.  That's the first point.

14   It is a very real concern.  It is upon information and belief,

15   as well as a discussion with Mr. MacDougall, that I think that

16   he has possession of some of that information, Your Honor.

17        With respect to the sealing issues and all, we

18   appreciate the Court's concern as well.  We're actually, if

19   there is a way to think about some alternatives here, we're

20   open to that.  We have been in a dialogue with Alcoa as a

21   cooperating entity, there is no doubt about that, but there

22   are also two other parties to this proceeding who would get

23   this information.  Now, if, as the Court suggests, I were to

24   review it ex parte before they could get it, maybe I could

25   advise the Court if I had a concern or not.  If there was a

1    way to bifurcate this proceeding between Alcoa and the other

2    parties, I think that we could possibly entertain that, too.

3    But there is a concern about the fact that two other parties

4    are going to get this type of information and may disseminate

5    it.

6         Finally, Your Honor, with all due respect, the

7    government's view of the facts do not simply track Alba's.

8    There is a dedicated team of prosecutors and FBI agents and

9    IRS agents who have worked their souls out and traveled in the

10   back of the plane around the world to investigate this case,

11   and I assure the Court that the government's understanding of

12   this scheme, this global scheme and the facts in this case,

13   does not merely track a plaintiff's complaint but is much more

14   robust.  Thank you, Your Honor.

15        THE COURT:  Thank you.  Anybody else have anything

16   to say?

17        MR. ESSEKS:  Yes, Your Honor.

18        THE COURT:  You are?

19        MR. ESSEKS:  David Esseks on behalf of Mr. Dahdaleh.

20        Your Honor, as I said in my position statement to

21   the Court, Mr. Dahdaleh was charged in London last week with

22   various criminal offenses under UK law that are related to

23   some of the allegations brought by Mr. MacDougall on behalf of

24   his client.

25        For that reason, we are entirely in accord with

1    Mr. Safwat that substantive discovery should not proceed in
2    this case because he's awaiting trial in London.

3            But I came forward simply to respond to one point
4    made by Mr. Safwat and Mr. MacDougall about the RICO
5    statement.  We will be joining the motion to dismiss if it is
6    made, and we join in Alcoa's view about the propriety of
7    allowing some of the process for getting a RICO statement
8    made.

9            My point simply is this, Your Honor, because
10   Mr. Dahdaleh is charged in London, he will, at the
11   beginning -- at the latest the beginning of January, next
12   year, be given access to the entire prosecution case from the
13   SFO. The SFO has been working hand-in-glove with Mr. Safwat
14   for more than two years.

15           I doubt that Mr. Safwat will suggest that when the
16   UK government gives Mr. Dahdaleh its full file, both those --
17   the material that they are relying on to charge him and the
18   not necessarily material, essentially, potential Brady
19   material in our lingo, Your Honor, when the SFO gives him its
20   full file, I can't suspect that Mr. Safwat is going to tell
21   Your Honor that there will be an entire range of issues and
22   facts and information about witnesses that will not be fully
23   accessible to him.

24           I sense, in the statement that he just made to the
25   Court, that he is implying that my client would be the source

1    of intimidation and harassment of these witnesses.  Not

2    possibly true, Your Honor.  He is a long-standing businessman.

3    He is a governor of the London School of Economics.  He is a

4    philanthropist of world renown.  He is not running around

5    intimidating witnesses, nor is anyone on his behalf doing

6    that.  But the plain facts are, Your Honor, these facts that

7    Mr. MacDougall and Mr. Safwat are so intent on keeping from

8    access to the defendants are about to be displayed --

9         THE COURT:  So they will be revealed to your client

10   in January.  Although, we don't necessarily know that, I know

11   you said they are working hand-in-glove, but the DOJ and the

12   SFO are separate entities, and I don't know that one has a

13   case identical to the other.

14        MR. ESSEKS:  I can't tell Your Honor that they are

15   perfectly identical, Your Honor, but I can tell the Court the

16   following and I can ask Mr. Safwat his view of it, but what I

17   can tell the Court is the SFO, two years ago, executed a whole

18   number of search warrants in London on behalf of Mr. Safwat.

19        We know -- I know from evidence obtained from

20   statements we have seen out of the SFO file that they have

21   been working in very close coordination with Mr. Safwat and

22   his team.  The idea that there is significant information that

23   is not in SFO's hands, when they are investigating the same

24   set of facts, is fanciful, Your Honor, and I expect Mr. Safwat

25   will have to confirm that he has made substantial coordination

1    with SFO.

2         And therefore, I think that the parade of horribles

3    that is being put to Your Honor in aid of avoiding a RICO

4    statement being put forward now is just not well taken.

5         MR. SAFWAT:  Your Honor, Mr. Esseks correctly noted

6    the government, the United States government, and the Serious

7    Fraud Office, we are law enforcement partners as we are with

8    many other partners, but we are conducting parallel,

9    independent investigations, and we do not have the same file,

10   and we do not have open file discovery among each other.

11        Mr. Esseks made another representation about the

12   search warrant.  I think the representation is incorrect.  I

13   would prefer, if the Court's wants to hear about it with

14   Mr. Esseks, we address it at side bar under seal, if it's

15   relevant.

16        THE COURT:  I don't think --

17        MR. SAFWAT:  The implication is incorrect.  Thank

18   you, Your Honor.

19        THE COURT:  Anybody else have anything to say?

20        MS. BAILEY:  Yes, Your Honor.  Ashley Bailey on

21   behalf of Bill Rice.

22        Your Honor, just briefly.  We join in Alcoa's

23   motion.  We agree with the argument articulated by Alcoa's

24   counsel and the procedure that they have suggested.  But we

25   stress, Your Honor, that there are human beings involved in

1   this case who have been in limbo for three and a half years.

2           We rely upon our position paper with respect to our

3   understanding and our belief about the status of the

4   government's investigation.  But based upon our statements in

5   that paper, Your Honor, we do not see how allowing Bill Rice

6   to test Alba's complaint at this point could possibly

7   interfere with the government's investigation.

8           For that reason, Your Honor, we ask that you allow

9   Mr. Rice to respond to the allegations that Alba has made

10  against him because he has been living under a cloud of

11  suspicion for a very long time as a result of being named as a

12  defendant in this case and then as a result becoming the

13  subject of a government investigation.

14          Your Honor, we ask that you grant our motion so that

15  Mr. Rice can address the allegations and thereby permit Your

16  Honor to determine whether Alba has actually articulated any

17  claim in this case upon which relief can be granted.

18          THE COURT:  Well, I'm not going to disagree with you

19  that I'm sure this has taken an emotional toll on Mr. Rice

20  because he's a human being, of course it would, being the

21  target of an investigation as well as having your name in the

22  paper and being a senior executive of a big corporation, and I

23  understand that.

24          I guess I'm not -- and I don't think the government

25  can take forever.  I don't think you can take another three

1   and a half years to decide whether or not you're going to

2   indict Mr. Rice or anyone else.

3          But you know, having come this far, I'm still not

4   sure why it has to be today and not six months from now, if

5   the government can wrap it up.  I understand, every day, it is

6   bad for him, and every day in the past three and a half years

7   have been bad for him.  It's been bad for Alcoa.  The

8   publicity is not good.  No question about it.  No one likes

9   bad press but I'm just not sure why I shouldn't give the

10  government more time if they need it when that time has been

11  limited to six to eight months.

12         MS. BAILEY:  Respectfully, Your Honor, we would

13  submit that there would be no real purpose in giving the

14  government more time because, first of all, we suspect that

15  six months from now, we'll be right back where we are here

16  today.

17         And second, because the procedure that Alcoa has

18  suggested to Your Honor would mitigate all of the concerns

19  that the government has suggested are the reasons for its

20  opposition to our motion.

21         THE COURT:  Well, you know, I really don't like that

22  procedure.  To me, personally, it is something that I don't

23  like.  I don't like half the story out there for the public,

24  the other half not.  It's something that is troublesome to me.

25         If Alba is going to file a RICO case statement, then

1    they are going to file a RICO case statement, and it's going

2    to be a public record because we're here in court.  They chose

3    to litigate in the public and that's what we're doing here,

4    we're in the public, and the government is going to have to

5    live with that when it happens.  And you know, there may be

6    some merit to what Mr. Esseks just said that this information

7    is going to be out there anyway.  I'm not sure that the

8    government was really casting aspersions on Mr. Esseks' client

9    only.  He's talking about foreign governments here and legal

10   systems and police forces that are different from what we are

11   used to in this country.

12         So, I don't know what the risks are.  But when I

13   think about those risks and the danger to other people, again,

14   I don't think the government is entitled to more time and you

15   may be right.  You may be right when you say that you suspect

16   that we will come back and the government in six months is

17   going to be right where they are today but I'm not.  I'm not

18   going to be that way because they don't get forever.  They

19   just have to make a decision.

20         You know, you always want more, especially when

21   you're the federal government.  You like to get it all wrapped

22   up in a bow and make sure it's air tight but sometimes you

23   have to go with what you have and make the decision and cut

24   the cord.

25         MS. BAILEY:  Well, Your Honor, we will, obviously,

1    respect whatever decision Your Honor makes, but we would

2    submit that if we go through the procedure suggested by

3    Mr. Chesler, yes, there will be some pleadings filed in a

4    redacted state, and in an ideal world, that is not preferable,

5    but six months from now, assuming that the government does

6    wrap up its investigation, then those documents could be --

7    the full document could be released to the public.  So, you

8    know, the harm that would be cast upon the public is certainly

9    not permanent.  And Your Honor, when it's weighed against the

10   harm, especially to the individuals in this case who have been

11   living under this cloud of suspicion, have had their names on

12   the front pages of the newspapers, Your Honor, we believe that

13   the rights of Mr. Rice and the other individuals outweigh the

14   interests of the public in having full access to those

15   documents just for a mere six months.  Thank you, Your Honor.

16              THE COURT:  Thank you very much.

17              Anybody else have anything to say?  If not, I'm just

18   going to take a short break.  I'll be right back.

19                        (Recess had.)

20              THE COURT:  I'm sorry.  I had another conference I

21   had to do at three o'clock with a civil case.

22              So, I guess what I'm mainly concerned with,

23   Mr. Safwat, is this.  I'm concerned with the ability under the

24   present circumstances of the DOJ and the defendants, Mr. Rice,

25   Mr. Dahdaleh, Alcoa, their ability to sit down with you at the

1   table to reach some kind of resolution and have to deal with

2   this treble damage RICO case.  That's my biggest concern

3   because if I give you this time, and it's the time that you're

4   either going to indict or not indict, then their opportunity

5   is gone.  How is that fair to them?

6           MR. SAFWAT:  Your Honor, I think that they have an

7   opportunity to have dialogue with us.  We have had dialogue

8   with Alcoa and --

9           THE COURT:  But how can they do that in light of

10  this treble damage RICO lawsuit facing them?

11          MR. SAFWAT:  Well, I understand the Court's

12  concerns.  My problem, from the government's perspective, is I

13  have to live with it, too.

14          THE COURT:  No, but those aren't the same concerns.

15  The government doesn't have the same concerns as Mr. Rice and

16  Alcoa and Mr. Dahdaleh.

17          MR. SAFWAT:  We have, actually, through dialogue

18  with Alcoa, we have actually extended a lot of indulgence,

19  Your Honor.  We have, because of our understanding that they

20  have this predicament, and because they have made a

21  representation to us that they are in settlement discussions

22  which, of course, we stay out of those but based on those

23  representations --

24          THE COURT:  You mean with Alba.

25          MR. SAFWAT:  Absolutely.  Based on those

1   representations which we take as the most effective course, we

2   have indulged them more time, Your Honor.  One thing I would

3   ask the Court --

4          THE COURT:  What do you mean you've indulged them

5   more time?  I'm not sure what that means.

6          MR. SAFWAT:  We have, Your Honor, I think -- I'm a

7   little uncomfortable getting specific in public.  Maybe we

8   could do this at the bench but I guess what I'm saying is, we

9   have expressed to them a view, and we are in dialogue with

10  them, and we are listening to them, but we understand that

11  they have issues that they need to resolve.  And so, I think

12  we take all those things into consideration.

13         THE COURT:  Even more than the witness intimidation

14  and the harassment, that is really my main concern.  How do

15  they sit down at the table with you now, because six months

16  from now, if you're going to indict, it's too late.  There

17  will be no resolution other than an indictment.  Then whatever

18  they do with you, you know, they have got this very -- Alba is

19  claiming hundreds of millions of dollars in damages.

20         MR. SAFWAT:  They are in no different position than

21  they were in the last three years, Your Honor.  Because if we

22  had gotten through informed sources some evidence earlier, we

23  could have been in a position to proceed earlier and we would

24  have -- we could have proceeded at any time without providing

25  anyone notice about the civil suit and about the stay and

1    moved to either lift or reconsider the stay after we

2    proceeded.  So, I don't see how their position today is any

3    different than it has been over the last three years other

4    than they, apparently, have not had a successful attempt at

5    negotiation.  There has been a high profile arrest and they

6    feel we need to do something.

7             Our position, however, is different, Your Honor.

8    The equities on the government's side are more compelling even

9    now, given the resources spent, and the very compelling nature

10   of the investigation.  And I assure your Court that the

11   government is sensitive to the issues the Court is raising,

12   and we are –– we do have dialogue with them.  We try to

13   accommodate them, but ultimately, I think somebody's position

14   has changed.  It is the status of the investigation which is

15   in a much more sensitive and more sure stage than Alcoa's

16   position which has pretty much been the same as it has been

17   since the beginning of this case.

18            THE COURT:  What do you think about Mr. Chesler's

19   suggestion that this, perhaps, there be a redacted version

20   filed and Ms. Bailey's very important point that this isn't

21   forever.  This is something that can be lifted.  What do you

22   think about those?

23            MR. SAFWAT:  This is absolutely not forever.  I hear

24   the Court loud and clear.  We will have to make a decision and

25   if we are unable to make a decision, if the Court grants us

1    six months and we are unable to make a decision, I hear what

2    the Court is saying, that the Court is not going to sit around

3    forever.  Like the Court said, we like to have it neat

4    sometimes but sometimes you got to cut the cord and you got to

5    go with what you got to go.  I absolutely appreciate that

6    message.

7              So, that is how I respond to Ms. Bailey's concern

8    and to Your Honor's concern.

9              THE COURT:  You're saying that, in six months,

10   you'll do whatever you have to do, but again, and I know I'm

11   repeating myself.  What concerns me about that is then the

12   opportunity for the defendants is gone if your decision is to

13   indict.  Then they haven't had, you know -- and you say they

14   had it but they really haven't because this case has been

15   there forever, the civil case.

16             MR. SAFWAT:  But that isn't different from any of

17   the other cases in which the Court actually will stay a case

18   pending a criminal trial.  In those cases, particularly where

19   the SEC also files an action, and the Court has stayed.

20   Courts will often pretty much shut down the entire civil case

21   until the end of the criminal trial, and they do that because

22   they recognize that the criminal interests in investigating

23   and prosecuting a similar set of facts outweighs their

24   opportunity to defend a civil case.

25             THE COURT:  But in those cases like, you know,

1    Le-Nature's, we were still able to do at lot of other

2    discovery but the people have already been indicted.  There

3    have been indictments already.

4                MR. SAFWAT:  But that assumes people will or will

5    not be indicted.  I'm not sure how -- they don't have an

6    opportunity, they don't have a right to know right now whether

7    they are going to be indicted or not.  That is part of the

8    secretive process of federal investigations in part to protect

9    the government's strategy, to protect witnesses, to insure

10   that people are not tailoring their statements.  They

11   certainly can take other steps that they want to take.  They

12   can communicate with the government if they want to.

13               THE COURT:  Well, we know at the very least that if

14   the stay is lifted, we know that Alba is going to file an

15   amended complaint.  We know that.  That is the first thing

16   that is going to happen.

17               The second thing that would happen is the RICO case

18   statement and then I guess the next thing that would happen

19   would be a motion to dismiss.

20               I don't know.  I mean, I think I have to think,

21   maybe give myself a couple, an hour or so, or maybe a day or

22   so to mull it over, but I'm not satisfied with anything I've

23   heard about my biggest concern which I have repeated several

24   times to you.  That is my biggest concern.

25               MR. SAFWAT:  Frankly, Your Honor, two things.

1          First of all, if the Court is willing to depart from

2    its normal preference for open litigation.

3          THE COURT:  That's a problem.

4          MR. SAFWAT:  That is a problem but we are happy to

5    consider certain intermediate steps perhaps.

6          THE COURT:  But Ms. Bailey really put me back on

7    track with that when she said it's not forever.  A little bit

8    of time.

9          MR. SAFWAT:  And it's not forever, Your Honor.

10   Absolutely.

11         But the other thing I'd say is that even if the

12   civil litigation is allowed to go forward, the predicament

13   that they suggest that they are in right now may not only

14   still exist, it may be worse.  So, I'm not sure how, in

15   essence --

16         THE COURT:  Why would it be worse?

17         MR. SAFWAT:  They may be facing liability on two

18   fronts.

19         One of the reasons that courts will stay civil

20   litigation is because sometimes the resolution of the criminal

21   matter in one form or another may moot the civil litigation.

22   It may have certain collateral consequences or collateral

23   effect.

24         I'm not going to -- I haven't briefed up on that

25   law, but I think that for them to be saying that their

1  position here today is somehow different than it's been in the

2  last three years or may somehow be worse than it might be

3  should they get what they want, I think that's pure

4  speculation.  I think it's quite conceivable that they could

5  find themselves in a worse position as well.  So, I think for

6  them to say that is a lot of speculation.

7            THE COURT:  I'm sure they are very happy that you're

8  concerned about the position they might be in, but I think

9  they see it differently.

10           MR. SAFWAT:  Thank you, Your Honor.

11           THE COURT:  But thank you.  Thank you very much.

12           You want to say something again?

13           MR. CHESLER:  Thank you, Your Honor.

14           THE COURT:  Surely.

15           MR. CHESLER:  Just several points, Your Honor.  We

16  had face-to-face meetings with Alba in 2009 in order to try to

17  solve the problem I raised with Your Honor.  They didn't

18  succeed.

19           We had face-to-face discussions in 2011 with Alba.

20  They didn't succeed.

21           There were virtually no communications that I'm

22  aware of of any kind or between counsel or their clients in

23  the intervening time.  I have been telling Mr. Safwat about

24  this problem since the first time we spoke about this.  He's

25  absolutely right.  Our position hasn't changed.  I have told

1   him multiple times we are between the rock of the government

2   and the hard place of this RICO case.

3           THE COURT:  You really are.

4           MR. CHESLER:  Now, what's happened since, Your

5   Honor?  Several things have happened since.  First of all, we

6   went to Mr. Safwat after the latest round of negotiations

7   failed.  And in the wake of the Morrison case which, by the

8   way, had not been decided until we were two-thirds of the way

9   through the investigation to date, and which is when we

10  started looking at this issue saying, you know, this is a

11  legal question as opposed to the normal 12(b)(6) walk-through

12  the stated facts, et cetera, and therefore, their main fact or

13  reason why we need to act now.  That didn't happen until the

14  summer of 2010.

15          We went to Mr. Safwat.  I personally described to

16  him exactly what we were going to do or what we wished to do

17  and asked for the government's either consent or lack of

18  opposition to what we were going to do.  Understanding that

19  the stay was imposed at the government's request and without

20  the government taking a position, it was going to be a lot

21  harder to persuade Your Honor that you should now lift the

22  stay if the government was still opposing it.  Mr. Safwat said

23  he needed to consult with the Department of Justice which I

24  would expect, of course, and then came back and said they

25  would not consent but they would not oppose it.

1          My partner, who is sitting right there, then called

2     Mr. Safwat several weeks ago and read him the operative

3     section of the motion over the phone.and he said, that's fine.

4     We do not oppose it.  It was only after we then served the

5     papers that the government then said, well, wait a minute.

6     We're not going to take that position with respect to the RICO

7     statement but we still take the same position of not opposing

8     it with respect to the motion to dismiss.

9          I had a lengthy conversation with Mr. Safwat last

10    week while I was traveling in Europe and explained to him that

11    I couldn't even understand that position because the first

12    thing that Alba was going to do, when we moved to dismiss, was

13    come back with an amended complaint, and I suspect that the

14    amended complaint would look just like the RICO statement.

15    How can it be that the Department of Justice had moved to this

16    hybrid position of not opposing a motion to dismiss but

17    opposing a RICO statement when they are one and the same?  And

18    I got no satisfactory answer to that because there is no

19    satisfactory answer.

20         Our position, as Mr. Safwat said, has been the same

21    all along.  We've tried multiple times to settle this, to

22    alleviate the problem, resolve the problem.  That has not

23    succeeded.  The Morrison case was decided in the interim.

24    Nothing is going to change, Your Honor, in six months or nine

25    months or however long it takes till the government's decided

1   it's comfortable deciding on whether to indict or not.  With

2   one exception.  The only thing that is going to change is that

3   Mr. Safwat is going to tell me then, I'm about to indict your

4   client and you didn't come in here and take responsibility.

5   You don't get any credit for that.  You are now -- the only

6   thing he's effectively willing to give me is a very big

7   cigarette to smoke before the firing squad fires.

8           First, we're an American company.  We're entitled to

9   our day in an American court.  We're not going to intimidate

10  anybody.  We think that this thing can be redacted selectively

11  so as to balance these interests, Your Honor.  I implore you

12  to consider that option.  Thank you.

13          MR. SAFWAT:  Your Honor, may I respond to something

14  Mr. Chesler said?

15          THE COURT:  Sure.

16          MR. SAFWAT:  Mr. Chesler and I, with all due respect

17  to Mr. Chesler, we have a disagreement.  I don't think that

18  disagreement is relevant to the Court.  I absolutely did tell

19  him we had no opposition to the filing of a motion to dismiss

20  on jurisdictional grounds.

21          If there is a misunderstanding that that entailed a

22  RICO statement, I will take responsibility for that, but I

23  have no recollection of a discussion of that.  And so, I just

24  respectfully put that out there so the record is clear.

25          I understand the Court's concern.  That is why, A,

1    we're not asking for a definite period of time, but we also

2    are pointing out to the Court that the position that

3    Mr. Chesler just articulated that he is in, between a rock and

4    a hard place, is the same position he has been in for the last

5    three years.

6            Our investigation, however, is not in that position.

7    Our investigation is at a far more compelling stage, at a more

8    sensitive stage.  And Your Honor, the interests of the United

9    States, given the facts that we have seen, given the interests

10   of the United States government in enforcing the international

11   corruption laws when there is credible evidence showing that

12   there has been a widespread scheme that involves very senior

13   people in foreign governments and vast amounts of money, I

14   implore the Court to realize the public's interest at least in

15   insuring the integrity of the investigation for a few more

16   months.

17           And Your Honor, I'm not here to say that we're going

18   to indict them in six months.  I never said that today.  I

19   absolutely would not say that today.  I do not have the

20   authority to say that today.  It would be irresponsible.

21   That's why I have to be, obviously, very careful in my

22   statements.  As I said, we have been having an ongoing

23   dialogue with them.  And Your Honor, the government has

24   actually been very transparent with Alcoa, sharing with Alcoa

25   certain things that it has not shared with other parties in

1  this case or other persons involved in this global conduct

2  because Alcoa is a United States corporation, has come in and

3  said they want to cooperate with us.

4       I will also say, Your Honor, that one of the reasons

5  there is a delay in this case is because there was a critical

6  set of documents related to one of the -- what we would

7  describe -- one of the "contracts" that they entered into in

8  this case.  That is one of the core issues we're looking at.

9  And the documents surrounding the negotiation of that contract

10  and the communication of that document -- of that contract, we

11  had requested within months of the commencement of the

12  investigation as we got a better understanding of the facts.

13  We found out a year later that they had not provided the

14  information when we were reviewing the discovery that had been

15  provided to us.  So, our investigation's also been delayed by

16  Alcoa's own conduct but I am not here to have a public

17  disagreement with Alcoa.

18       I am here to tell the Court that the interests of

19  the government in this investigation are extremely compelling,

20  and we need this RICO statement stayed for a few more months

21  so that we may accomplish certain steps.  And then, I

22  understand.  I hear the Court loud and clear.  Time is up.

23  Thank you, Your Honor.

24            THE COURT:  Okay.  Mr. MacDougall.

25            MR. MacDOUGALL:  May I be heard very briefly?

1          THE COURT:  Yes.

2          MR. MacDOUGALL:  Your Honor, we weren't expecting to

3     have a back and forth here about settlement negotiations or

4     plea negotiations.  I don't want to perpetuate that except to

5     say that I'm well aware of the so-called negotiations that

6     Mr. Chesler was describing.  I would characterize them as

7     neither serious, nor substantive.

8          THE COURT:  Between Alba and Alcoa.

9          MR. MacDOUGALL:  Yes, Your Honor.

10          Moreover, I think that they were largely undertaken

11    to allow Mr. Chesler to today represent that they had taken

12    place, but our view was that they were not seriously

13    undertaken.

14          We will file an amended complaint, Your Honor, if

15    the Court lifts the stay.  It will be robust.  It will be

16    detailed.  It will be comprehensive, and it will carry with it

17    a great deal of the new information that we have uncovered in

18    the intervening three and a half years.  It will show, and I'm

19    quite confident, under Morrison and under the progeny of

20    Morrison, a domestic RICO enterprise that took place in this

21    city.  That, Your Honor, this is really what I wanted to point

22    out, that will put Alcoa between a rock and a harder place

23    with respect to the government.  Because if their motion to

24    dismiss is denied, our case is not going away short of

25    discovery, summary judgment, and trial, and then they're going

1    to have a much more serious problem.  And based upon my

2    reading of Morrison -- and again, I make this representation

3    because I know what our evidence is and I know what we're

4    going to be alleging.  Based upon my reading of Morrison,

5    we'll survive that motion and then their problems will be

6    geometrically increased.  Thank you.

7           THE COURT:  You know, I usually try to rule on

8    everything as quickly as possible, but I just think I need a

9    little bit of time to digest everything.  I promise you that

10    there will be a ruling and it will be at the latest next week.

11           So, I thank you all for your arguments.  You've

12    really helped me a lot today.  I thank you for that and I

13    guess that's it until you hear from me.

14           MR. CHESLER:  Thank you, Your Honor.

15                    *  *  *  *  *

16           I certify my original signature herein that the

17    forgoing is a correct transcript from the record of

18    proceedings in the above-entitled matter.

19

20    s/Patricia Sherman
       Official Court Reporter
21    NOVEMBER 3, 2011

22

23

24       *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

25