**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

—————————————————————— x
        :
ALUMINIUM BAHRAIN B.S.C.,        :
        :
        Plaintiff,        :
        -against-        :        2:08-CV-299-DWA
        :
ALCOA INC., ALCOA WORLD ALUMINA LLC,        :
WILLIAM RICE, and VICTOR DAHDALEH,        :
        :
        Defendants.        :
        :
—————————————————————— x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## VICTOR DAHDALEH'S MOTION TO DISMISS THE AMENDED COMPLAINT

David J. Berardinelli (Pa. ID No. 79204)
DEFOREST KOSCELNICK YOKITIS
SKINNER & BERARDINELLI
436 Seventh Avenue
Pittsburgh, PA 15219
Tel. (412) 227-3100
Fax. (412) 227-3130

Michael S. Feldberg
David C. Esseks
Carrie Baker Anderson
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 610-6300
Fax. (212) 610-6399

*Attorneys for Defendant*
*Victor Dahdaleh*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

THE COMPLAINT ...................................................................................................2

ARGUMENT ...........................................................................................................5

    I.     THE COMPLAINT MUST BE DISMISSED AS TO VICTOR DAHDALEH BECAUSE THE COURT HAS NO PERSONAL JURISDICTION OVER HIM........................................................................5

        A.    Alba Must Plead Jurisdiction With Particularity ..........................6

        B.    Alba Has Failed To Plead That Victor Dahdaleh Had Minimum Contacts With Pennsylvania ........................................................7

        C.    Allegations That Dahdaleh Companies Had Contacts With Pennsylvania Are Irrelevant......................................................10

        D.    Exercising Personal Jurisdiction Over Victor Dahdaleh Would Not Be Consistent With "Fair Play And Substantial Justice".........................12

    II.    PLAINTIFF'S RICO CLAIMS FAIL UNDER MORRISON...............................13

        A.    The RICO Statute Has No Extraterritorial Application.............................13

        B.    Alba's Attempt To Cloak The Foreign Enterprise In Domestic Garb Fails.................................................................................15

    III.    ALBA'S RICO CLAIMS FAIL BECAUSE IT HAS NOT PLED WITH PARTICULARITY AN ENTERPRISE WITH A COMMON PURPOSE...........23

        A.    An Association-In-Fact Enterprise Requires A Common Purpose............23

        B.    Alba Alleged A Scheme To Defraud It Through Bribery.........................24

        C.    Alba Has Not Alleged With Particularity That Anyone At Alcoa Agreed To The Alleged Bribery ...............................................25

    IV.    PLAINTIFF'S STATE LAW CLAIMS AGAINST VICTOR DAHDALEH MUST BE DISMISSED ................................................26

        A.    Plaintiff Has Failed To State A Fraud Claim As To Victor Dahdaleh ..............................................................................26

        B.    Plaintiff Has Failed To State A Claim For Civil Conspiracy ...................27

    V.    VICTOR DAHDALEH JOINS IN THE MOTIONS TO DISMISS FILED ON BEHALF OF ALCOA INC., ALCOA WORLD ALUMINA LLC, AND WILLIAM RICE. ................................................................27

CONCLUSION.......................................................................................................28

# TABLE OF AUTHORITIES

## CASES

Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.,
    480 U.S. 102 (1987)....................................................................................................13

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ......................................................................................... passim

BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,
    229 F.3d 254 (3d Cir. 2000)........................................................................................13

Bell Atl. v. Twombly.,
    550 U.S. 544, 127 S. Ct. 1955 (2007)..............................................................19, 20, 23

Blackwell v. Marina Assocs.,
    05-Civ-5418, 2006 WL 573793 (E.D. Pa. Mar. 9, 2006) ...........................................10

Boyle v. United States,
    556 U.S. 938, 129 S. Ct. 2237 (2009).........................................................................23

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)............................................................................................. passim

Cedeño v. Intech Grp., Inc.,
    733 F. Supp. 2d 471 (S.D.N.Y. 2010), aff'd, Cedeño v. Castillo,
    No. 10-CV-3861, 2012 WL 205960 (2d Cir. Jan. 25, 2012) .......................................14

Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,
    230 F.3d 934 (7th Cir. 2000) ........................................................................................6

CGC Holding Co., LLC v. Hutchens,
    11-Civ-01012, 2011 WL 5320988 (D. Colo. Nov. 1, 2011)........................................14

Christian v. Fulton Fin. Corp.,
    10-Civ-789, 2010 WL 3398966 (E.D. Pa. Aug. 24, 2010) ...................................5, 7, 8

Cinalli v. Kane,
    191 F. Supp. 2d 601 (E.D. Pa. 2002) ..........................................................................27

D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,
    566 F.3d 94 (3d Cir. 2009), cert. denied, 130 S. Ct. 2340 (2010) ............................7, 9

EBC, Inc. v. Clark Bldg. Sys., Inc.,
    618 F.3d 253 (3rd Cir. 2010) ....................................................................26

Elsevier Inc. v. W.H.P.R., Inc.,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010).......................................................24

European Cmty. v. RJR Nabisco, Inc.,
    No. 02-Civ-5771, 2011 WL 843957 (E.D.N.Y. Mar. 8, 2011), recon. denied,
    2011 WL 1463627 (E.D.N.Y. Apr. 15, 2011) .....................................14, 15

Freedom Med. Inc. v. Gillespie,
    634 F. Supp. 2d 490 (E.D. Pa. 2007) ........................................................26

Gen. Refractories Co. v. Fireman's Fund Ins. Co.,
    337 F.3d 297 (3d Cir. 2003)......................................................................27

Grant St. Grp. v. D&T Ventures, LLC,
    10-Civ-1095, 2012 WL 13689 (W.D. Pa. Jan. 4, 2012) ..............................9

Hanson v. Denckla,
    357 U.S. 235 (1958)...............................................................................9, 11

Helicopteros Nacionales de Colom., S.A. v. Hall,
    466 U.S. 408 (1984)........................................................................6, 7, 8, 10

In re Ins. Brokerage Antitrust  Litig.,
    618 F.3d 300 (3d Cir. 2010)................................................................23, 26

In re Le-Nature's, Inc.,
    No. 09-MC-162, 2011 WL 2112533 (W.D. Pa. May 26, 2011)............14, 15

In re Terrorist Attacks on Sept. 11, 2001,
    392 F. Supp 2d 539 (S.D.N.Y. 2005)..........................................................7

In re Toyota Motor Corp.,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ......................................................14

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945).......................................................................7, 12, 13

Keeton v. Hustler Magazine, Inc.,
    465 U.S. 770 (1984).................................................................................1, 7

Licci v. Am. Exp. Bank Ltd.,
    704 F. Supp. 2d 403 (S.D.N.Y. 2010)......................................................11

Lucas v. Gulf & W. Indus., Inc.,
    666 F.2d 800 (3d Cir. 1981)............................................................................10

Lum v. Bank of Am.,
    361 F.3d 217 (3d Cir. 2004)..........................................................................23

Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., Inc.,
    983 F.2d 551 (3d Cir. 1993)..........................................................................11

Midnet, Inc. v. Pharmacia Corp.,
03-CV-4782, 2005 WL 1385906 (3d Cir. June 13, 2005)..................................27

Miliken v. Meyer,
    311 U.S. 457 (1940).....................................................................................13

Morrison v. Nat'l Austrl. Bank,
    130 S. Ct. 2869 (2010)............................................................................ passim

Norex Petroleum Ltd. v. Access Indus., Inc.,
    540 F. Supp. 2d 438 (S.D.N.Y. 2007)..........................................................14

Norex Petroleum Ltd. v. Access Indus. Inc.,
    631 F.3d 29 (2d Cir. 2010)..............................................................14, 21, 22

Northrop Grumman Overseas Serv. Corp. v. Banco Weise Sudameries,
    No. 03-Civ-1681, 2004 WL 2199547 (S.D.N.Y. Sept. 29, 2004) ...............12

O'Connor v. Sandy Lane Hotel Co.,
    496 F.3d 312 (3d Cir. 2007)...........................................................................9

Ontel Prods., Inc. v. Project Strategies Corp.,
    899 F. Supp. 1144 (S.D.N.Y. 1995)..............................................................10

Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.,
    701 F.2d 889 (11th Cir. 1983) ......................................................................11

Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,
    819 F.2d 434 (3d Cir. 1987)............................................................................6

Rao v. BP Prod. N. Am., Inc.,
    589 F.3d 389 (7th Cir. 2009) ........................................................................24

Red Wing Shoe Co. v. Hockerson Halberstadt, Inc.,
    148 F.3d 1355 (Fed. Cir. 1998)......................................................................9

Reliance Steel Prods. Co. v. Watson,
    675 F.2d 587 (3d Cir. 1982)................................................................8

Salinas v. United States,
    522 U.S. 52 (1997)..........................................................................26

Stinnett v. Atl. City Showboat, Inc.,
    07-Civ-4743, 2008 WL 1924125 (E.D. Pa. Apr. 28, 2008).........................10

Stella Maris Ins. Co. v. Catholic Health E.,
    10-Civ-1946, 2010 WL 3522106 (E.D. Pa. Sept. 8, 2010).........................11

Time Share Vacation Club v. Atl. Resorts, Ltd.,
    735 F.2d 61 (3d Cir. 1984)..................................................................9

United States v. Philip Morris USA, Inc.,
    783 F. Supp. 2d 23 (D.D.C. 2011) ......................................................14

United States v. Turkette,
    452 U.S. 576 (1981)........................................................................23

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980)........................................................................12

## STATUTES

Fed. R. Civ. P. 4(k)(2)...........................................................................6

Fed. R. Civ. P. 8(a) .............................................................................1

Fed. R. Civ. P. 9(b) .............................................................................1

Fed. R. Civ. P. 12(b) ...........................................................................1

42 Pa. Cons. Stat. Ann. § 5301(a)(1) ......................................................6

42 Pa. Cons. Stat. Ann. § 5322(b)..........................................................6

Defendant Victor Dahdaleh respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(2) and 12(b)(6), to dismiss the Amended Complaint dated November 28, 2011 (the "Amended Complaint").

## PRELIMINARY STATEMENT

Victor Dahdaleh is a citizen of Canada and the United Kingdom who lives in London and Switzerland and has business interests across Europe and around the world but not in the United States.  He is sued by Aluminium Bahrain, or "Alba," a Middle-Eastern aluminum producer which asks this Court to hear its claim that he injured it in Bahrain by bribing its senior officials regarding contracts for the supply of alumina from Australia.  Mr. Dahdaleh has been charged in London with bribery offenses arising from the same facts alleged in this matter, and will raise complete and compelling defenses to those charges at the appropriate time.  The attempt by this foreign plaintiff to sue a foreign defendant in this Court for injuries allegedly sustained abroad must fail because (1) this Court has no jurisdiction over Mr. Dahdaleh, (2) the RICO enterprise alleged by Alba is foreign and beyond the scope of the RICO statute, and (3) Alba has failed to plead with the particularity required by Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the existence of a RICO enterprise with the requisite common purpose.

*First*, this Court has no personal jurisdiction over Mr. Dahdaleh.  He is a citizen of Canada and the United Kingdom who lives in London and Switzerland and conducts his business and personal affairs in Europe, Canada, Australia and the Middle East, but not the United States. Alba has not alleged that Mr. Dahdaleh "'purposefully directed' his activities at residents of" Pennsylvania in a manner that would warrant assertion of jurisdiction over him.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).  As a result, this Court does not have jurisdiction over Mr. Dahdaleh.

*Second*, the racketeering enterprise alleged by Alba was, by its own admission, one that injured a Bahraini company in Bahrain in connection with the pricing of alumina supply contracts between Alba and Alcoa of Australia or various companies allegedly controlled by Mr. Dahdaleh, each of which was established and operated entirely outside this country. As the victim, injury, conduct, contracts, and virtually every actor involved in the alleged enterprise are foreign, the enterprise itself is outside the scope of the RICO statute in light of <u>Morrison v. National Australia Bank</u>, 130 S. Ct. 2869 (2010), and its progeny and their teachings that the RICO statute's application stops at the U.S. border.

*Third*, Alba's complaint fails to plead the existence of an enterprise with sufficient particularity because it utterly fails to allege facts to support the claim that anyone at Alcoa agreed to the bribery in which Mr. Dahdaleh is alleged to have engaged. Without the common purpose of bribery, which is alleged throughout the Amended Complaint in conclusory form but never particularized in any way, Alba has failed to plead the existence of a RICO enterprise and the RICO claims must be dismissed.

## THE COMPLAINT

We set out below a summary of the material allegations by Alba in its Amended Complaint.

**Alcoa of Australia Supplied Alumina From Western Australia To The Smelter In Bahrain**

Alba requires a large supply of alumina as the principal raw material for its manufacture of aluminum. Am. Compl. ¶ 18. In 1990, Alba contracted with Alcoa of Australia to purchase alumina from its Western Australia alumina refineries. That 1990 contract was extended three times and expired in December 2004. Am. Compl. ¶ 38. Under that agreement, 60% of the supply was priced according to a set formula and the price for the remaining 40% (the "Market

Tonnage") was negotiated by the parties.  Am. Compl. ¶ 43.  In 1993 and 1996, Alcoa of

Australia assigned responsibility for supplying the Market Tonnage to Alba to certain companies

allegedly controlled by Victor Dahdaleh, none of which were incorporated or located in the

United States.[1]  Am. Compl. ¶¶ 26, 43-72.  Notwithstanding the assignment, Alcoa of Australia

remained the source of the alumina supplied to Alba under the 1990 Contract.  Am. Compl. ¶ 65.

Beginning in 2001, certain other companies allegedly controlled by Mr. Dahdaleh

(AAAC-1 and its successor, AAAC-2, both incorporated in Switzerland), issued invoices to Alba

for all the alumina purchased under the 1990 contract, as extended.  Am. Compl. ¶¶ 87, 99-100.

**Mr. Dahdaleh Received Agency Commissions From Alcoa Of Australia**

Between 1990 and 2004, Alcoa of Australia contracted with the Dahdaleh Companies

through agency agreements, and those companies were paid commissions, on a percentage basis

related to the alumina supply to Alba.  Am. Compl. ¶¶ 26, 39-40.  The cost of these commissions

from Alcoa of Australia was allegedly passed on to Alba in the form of inflated alumina prices to

Alba.  Am. Compl. ¶¶ 26, 41.  The Complaint alleges that the commissions were Mr. Dahdaleh's

compensation for facilitating bribes to senior officials of Alba and the Government of Bahrain

who induced Alba to enter into these economically disadvantageous contracts.  Am. Compl. ¶¶

26, 42.

---

[1] The Complaint identifies the following entities as "affiliated with Dahdaleh" (collectively, the "Dahdaleh Companies"): Alumet Limited, a company incorporated in the British Virgin Islands; Kwinalum Trading Pte Limited, a company registered in Singapore, and alleged to be a wholly-owned subsidiary of Alumet Limited; Alumet Asia Pte Limited, a company registered in Singapore and alleged to be the successor company to Kwinalum and a wholly-owned subsidiary of Alumet Limited; three entities incorporated in Switzerland, each bearing the name AA Alumina &  Chemicals ("AAAC-1," "AAAC-2," and "AAAC-3," respectively); and United Legal Engineering Consultants Limited, a company incorporated in Jersey, Channel Islands. Am. Compl. ¶ 15.

**The 2005 Contracts**

In late 2004, Alba put out to tender a new 10-year alumina supply contract and another Dahdaleh Company, AAAC-3, also incorporated in Switzerland, submitted a bid. Am. Compl. ¶ 134. Alba was told by Alcoa, in writing, that AAAC-3 was a "distributor" of Alcoa's alumina. RICO Case Statement, Ex. 6. Alba accepted AAAC-3's bid. It alleges that it entered into the contract on unfavorable terms because defendants paid bribes to officials at Alba. Am. Compl. ¶ 143. Under the 2005 contracts, AAAC-3 purchased alumina from Alcoa of Australia and then sold it to Alba. Am. Compl. ¶¶ 152-53.

**Payments**

The Complaint alleges that one Australian former CEO of Alba and an unidentified Bahraini government official received payments from Mr. Dahdaleh. Am. Compl. ¶¶ 93, 103, 117, 132, 149-50. The Complaint further alleges that the purpose of the payments was to ensure that Alcoa of Australia or the Dahdaleh Companies were awarded contracts to supply alumina to Alba. Am. Compl. ¶ 137. Plaintiff claims that "[a]n official" of Alba directed that the company agree to the Defendants' offer in relation to the 2005 Contract after receiving bribes from Defendants and did so because he stood to gain personally. Am. Compl. ¶ 141.

**Plaintiff Claims Unidentified Persons At Alba Did Not Know AAAC Was A Distributor**

The Complaint alleges that "Alba" was not aware that it was purchasing alumina from a distributor rather than directly from Alcoa of Australia. Am. Compl. ¶ 148. The Complaint further alleges that there was no commercially legitimate reason to have the Dahdaleh Companies involved in the supply of alumina from Alcoa of Australia to Alba in Bahrain. Am. Compl. ¶¶ 35-36.

**Failed Negotiations Between Alcoa And Alba For Equity Transaction**

In addition to its claims that the Defendants defrauded Alba through bribery regarding the alumina supply from 1990 through 2009, Alba also alleges that in 2003 and 2004, Alcoa and Alba negotiated concerning Alcoa's potential acquisition of an equity stake in the Bahrain smelter.  Am. Compl. ¶¶ 26, 111-128.  The Complaint alleges that Mr. Dahdaleh served as an agent of Alcoa during these negotiations.  Am. Compl. ¶ 113.  The parties allegedly had meetings in Bahrain and London, and conducted due diligence in Bahrain and New York.  Am. Compl. ¶ 127.  The transaction was never consummated.  Am. Compl. ¶ 123.  The Complaint alleges that terms discussed in the negotiations would have been unfavorable to Alba and that corrupt payments were made in connection with this failed transaction.  Am. Compl. ¶ 26, 117.

## ARGUMENT

**I.   THE COMPLAINT MUST BE DISMISSED AS TO VICTOR DAHDALEH BECAUSE THE COURT HAS NO PERSONAL JURISDICTION OVER HIM**

Victor Dahdaleh is a citizen of Canada and the United Kingdom who resides in London and Switzerland.  He has no home or business in the United States.  The Amended Complaint does not allege that he set foot in Pennsylvania in connection with his alleged acts in London, Bahrain, Australia, and elsewhere, or that he purposely directed his activities towards residents of Pennsylvania in any other manner.  Rather, it alleges simply, and in entirely conclusory fashion, that Mr. Dahdaleh "has had regular, continuous, and ongoing contacts with this jurisdiction through his actions on behalf of, and business relationships with, the other Defendants."  Am. Compl. ¶ 9.  As this naked allegation is plainly insufficient to establish personal jurisdiction over Mr. Dahdaleh in this Court, Christian v. Fulton Fin. Corp., 10-Civ-789, 2010 WL 3398966 at *2 (E.D. Pa. Aug. 24, 2010) (conclusory allegations are insufficient to demonstrate minimum contacts) (citing Iqbal, 129 S. Ct. at 1940), and as the Amended

Complaint fails to support that conclusory claim with any basis to find that Mr. Dahdaleh has had the necessary minimum contacts with Pennsylvania to warrant assertion of personal jurisdiction over him in this District, the Amended Complaint should be dismissed as to him.

### A.    Alba Must Plead Jurisdiction With Particularity

It is Alba's burden to plead "with reasonable particularity sufficient contacts between [the] defendant and [the] forum state to support jurisdiction." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). "To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." Id. (quoting Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 416 (1984)). General jurisdiction exists over individual defendants in Pennsylvania only where they are served with process, domiciled, or have consented to jurisdiction in Pennsylvania. 42 Pa. Cons. Stat. Ann. § 5301(a)(1). Mr. Dahdaleh has not consented to jurisdiction in Pennsylvania, is not domiciled there, and was served in London. Pl's Aff. of Service (Docket No. 22). Accordingly, there is no basis for general jurisdiction over Mr. Dahdaleh under § 5301(a)(1).

While the Pennsylvania long-arm statute allows assertion of personal jurisdiction to the "fullest extent allowed under the Constitution of the United States," 42 Pa. Cons. Stat. Ann. § 5322(b), Alba has nevertheless failed to allege sufficient "minimum contacts" by Mr. Dahdaleh with Pennsylvania to meet even this standard.[2] This Court may only exercise specific jurisdiction where an individual defendant "'purposefully directed' his activities at residents of

---

[2] Because, as demonstrated below, Mr. Dahdaleh is not subject to personal jurisdiction in Pennsylvania, Alba could invoke nationwide contacts pursuant to Fed. R. Civ. P. 4(k)(2). See Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 941 (7th Cir. 2000). But even if Rule 4(k)(2) authorizes worldwide service of process, Alba has not alleged minimum contacts with the United States as a whole.

the forum and the litigation results from alleged injuries that 'arise out of or relate to' those

activities." Burger King Corp., 471 U.S. at 472 (quoting Keeton, 465 U.S. at 774 and

Helicopteros, 466 U.S. at 414, respectively). In particular, plaintiff must demonstrate that (1) the

defendant has the requisite "minimum contacts" with the forum state; and (2) the exercise of

jurisdiction comports with "traditional notions of fair play and substantial justice." D'Jamoos ex

rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009), cert. denied,

130 S. Ct. 2340 (2010) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Neither test is met here.

### B.    Alba Has Failed To Plead That Victor Dahdaleh Had Minimum Contacts With Pennsylvania

Alba's complaint alleges the following regarding Mr. Dahdaleh's contacts with

Pennsylvania:

- "Dahdaleh has had regular, continuous, and ongoing contacts with this jurisdiction through his actions on behalf of, and business relationships with, the other Defendants." Am. Compl. ¶ 9.

- "Upon information and belief," Dahdaleh made bribe payments outside the United States "as the agent of Alcoa and its subsidiaries, including Alcoa World Alumina and Alcoa of Australia." E.g., Am. Compl. ¶ 96.

- Alcoa employees emailed Alba employees from Pittsburgh, and "often cop[ied] Dahdaleh." Am. Compl. ¶¶ 121, 168(f).

- Dahdaleh "represented Alcoa" in negotiations in London and Bahrain regarding a potential Alcoa investment in Alba that did not occur. E.g., Am. Compl. ¶¶ 113, 114.

The first allegation, that "Dahdaleh has had regular, continuous, and ongoing contacts

with this jurisdiction through his actions on behalf of, and business relationship with, the other

Defendants," Am. Compl. ¶ 9, is wholly conclusory and insufficient to satisfy plaintiff's burden.

Fulton Fin. Corp., 2010 WL 3398966 at *2 (citing Iqbal, 129 S. Ct. at 1940); In re Terrorist

Attacks on Sept. 11, 2001, 392 F. Supp. 2d 539, 556 (S.D.N.Y. 2005) (in assessing the

sufficiency of pleadings regarding personal jurisdiction, the court "does not accept conclusory allegations").

The second allegation, made only "upon information and belief," that Mr. Dahdaleh made bribe payments outside the United States "as the agent of Alcoa and its subsidiaries, including Alcoa World Alumina and Alcoa of Australia," is insufficient to establish any minimum contact with this forum. First, all of the bribe payments specifically alleged in the Amended Complaint or the RICO Case Statement were made abroad and had nothing to do with Pennsylvania.[3]  Second, the allegation that payments were made on behalf of any Alcoa entity, much less Alcoa Inc., is wholly conclusory and unsupported by any particularized allegation that anyone at any Alcoa entity knew that Mr. Dahdaleh was making payments to anyone.  See infra, Part III.  And if Mr. Dahdaleh did not make the alleged payments on behalf of Alcoa Inc., then the allegations of payments could not establish that Mr. Dahdaleh "purposefully directed' his activities at residents of [Pennsylvania]" or that "the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King, 471 U.S. at 472 (quoting Keeton, 465 U.S. at 774 and Helicopteros, 466 U.S. at 414, respectively); see Fulton Fin. Corp., 2010 WL 3398966 at *2.  And third, even if Mr. Dahdaleh acted as Alcoa's agent from outside the United States, that would not give rise to jurisdiction over him.  Reliance Steel Prods. Co. v. Watson, 675 F.2d 587, 589 (3d Cir. 1982) (provision of legal services in New York to client in Pennsylvania held insufficient to establish personal jurisdiction in Pennsylvania).

The third allegation, that Alcoa employees emailed Alba employees from Pittsburgh and "often cop[ied] Dahdaleh," is also insufficient.  Mr. Dahdaleh cannot be brought into this

---

[3] Exhibit 16 to Alba's RICO Case Statement shows payments from accounts in Jersey, Channel Islands, to accounts in the Isle of Man, Channel Islands, and London, England, with statements addressed to Bruce Hall in Manama, Bahrain.  There is no allegation that any of the alleged bribe payments were made from or received in the US.

jurisdiction by allegations that others copied him on emails.  Such "unilateral activities" are

"insufficient to establish personal jurisdiction" over him.  Grant St. Grp., Inc. v. D&T Ventures,

LLC, 10-Civ-1095, 2012 WL 13689, *5, 7 (W.D. Pa. Jan. 4, 2012) ("contacts resulting from 'the

unilateral activity of another party or third person are not attributable to a defendant" for

jurisdictional purposes) (quoting Red Wing Shoe Co. v. Hockerson Halberstadt, Inc., 148 F.3d

1355, 1362 (Fed. Cir. 1998) (quoting Burger King, 471 U.S. at 475))); D'Jamoos ex rel. Estate of

Weingeroff, 566 F.3d at 103 ("A defendant's contacts, however, must amount to 'a deliberate

targeting of the forum'" and cannot arise out of the "'unilateral activity of those who claim some

relationship with a nonresident defendant'") (quoting O'Connor v. Sandy Lane Hotel Co., 496

F.3d 312, 317 (3d Cir. 2007) and Hanson v. Denckla, 357 U.S. 235, 253 (1958), respectively).

     The fourth allegation, that Mr. Dahdaleh "represented Alcoa" in negotiations in London

and Bahrain regarding an Alcoa investment in Alba that did not occur, is insufficient for two

reasons.  First, acts taken outside the jurisdiction on behalf of a principal inside the jurisdiction

are insufficient to establish minimum contacts.  Reliance Steel Prods. Co., 675 F.2d at 589

(provision of legal services in New York to client in Pennsylvania held insufficient to establish

personal jurisdiction in Pennsylvania).  Second, because the $433 million in harm allegedly

caused Alba by the scheme charged, Am. Compl. ¶ 157, cannot have arisen from the "virtual

equity deal," which never happened.  And because Alba was not harmed by the unconsummated

deal in relation to which Mr. Dahdaleh is alleged to have "represented Alcoa," the allegation is

insufficient to establish a minimum contact with this forum for this lawsuit.  Time Share

Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 (3d Cir. 1984) ("unless a defendant has

'continuous and systematic general business contacts' with the forum state, the cause of action

must arise from those activities within the state which would give rise to personal jurisdiction")

(quoting Helicopteros Nacionales de Colom., S.A., 466 U.S. at 416).

In short, Alba's allegations do not establish that Mr. Dahdaleh had the requisite minimum

contacts with Pennsylvania to confer jurisdiction over him.  Mr. Dahdaleh is not alleged to have

"purposefully directed his activities" at Pennsylvania.

### C.    Allegations That Dahdaleh Companies Had Contacts With Pennsylvania Are Irrelevant

Alba has also alleged certain contacts between various companies allegedly owned or

controlled by Mr. Dahdaleh and Alcoa, but any contacts by Mr. Dahdaleh's companies cannot

establish minimum contacts by Mr. Dahdaleh.  Stinnett v. Atl. City Showboat, Inc., 07-Civ-4743,

2008 WL 1924125 at *5 (E.D. Pa. Apr. 28, 2008) ("'mere ownership of a subsidiary does not

subject the parent corporation to personal jurisdiction in the state of the subsidiary'") (quoting

Blackwell v. Marina Assocs., 05-Civ-5418, 2006 WL 573793 at *5 (E.D. Pa. Mar. 9, 2006)

(citing Lucas v. Gulf & W. Indus., Inc., 666 F.2d 800, 805-6 (3d Cir. 1981) (abrogated on

different grounds)); Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144 , 1148

(S.D.N.Y. 1995) ("[T]he individual who owns a corporation is generally not subject to personal

jurisdiction as a result of the corporation's activities unless (1) the corporate veil can be 'pierced'

or (2) the corporation acted as agent for the owner.")  Moreover, Alba's allegations would be

insufficient to establish minimum contacts with Pennsylvania even if, as it has not, Alba made

sufficient veil-piercing allegations to attribute the company conduct to Mr. Dahdaleh.

In particular, Alba alleges that:

- Dahdaleh-owned companies contracted with Alcoa of Australia to purchase, market, or distribute alumina.  E.g.  Am. Compl. ¶¶ 20, 26, 57, 73, 77, 78, 83-84, 91; RICO Case Statement at 6-10; and

- Dahdaleh-owned companies made or received certain payments via bank accounts in New York.  E.g.  Am. Compl. ¶¶ 53, 72(a).

The claim that Dahdaleh-owned companies contracted with Alcoa of Australia to purchase, market, or distribute alumina alleges contact with Australia, not Pennsylvania.  Although Alcoa of Australia may be wholly owned by Alcoa Inc., it is a separate corporate entity and a contract with an Australian corporation is not a contract with an American company based in Pittsburgh.  See Stella Maris Ins. Co. v. Catholic Health E., 10-Civ-1946, 2010 WL 3522106 at *4 (E.D. Pa. Sept. 8, 2010) (defendant's contract with out-of-state affiliate of Pennsylvania corporation was insufficient to confer personal jurisdiction over him) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  And in any event, "[c]ontracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant." Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 557 (3d Cir. 1993).

Alba's claim that Dahdaleh-owned companies made or received certain payments via bank accounts in New York alleges at most a contact with New York, not with Pennsylvania, and is therefore insufficient to establish minimum contacts with this forum.  Moreover, the Amended Complaint contains no allegation that any of the accounts in New York belonged to either Mr. Dahdaleh or any of his companies.  If receipt or payment of money through another party's bank account in New York sufficed for minimum contacts for suit, then anyone worldwide who did business in U.S. dollars would thereby be subject to suit in New York, since U.S. dollar transactions clear through correspondent bank accounts in New York.  See Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V., 701 F.2d 889, 891 (11th Cir. 1983) (courts routinely hold that a correspondent banking relationship "is not sufficient to confer personal jurisdiction over a foreign bank"); Licci v.  Am. Exp. Bank Ltd., 704 F. Supp. 2d 403, 407 (S.D.N.Y. 2010) (correspondent bank accounts are necessary for international banking and "maintenance of [a] correspondent bank account with a financial institution in New York is not,

standing alone, a sufficient basis to subject a foreign defendant to personal jurisdiction");

Northrop Grumman Overseas Serv. Corp. v. Banco Weise Sudameries, No. 03-Civ-1681, 2004

WL 2199547, at *8 (S.D.N.Y. Sept. 29, 2004) ("It is well settled that the existence of a

correspondent banking relationship between a foreign bank and a New York correspondent bank

does not subject the foreign bank to jurisdiction here.").

> **D.    Exercising Personal Jurisdiction Over Victor Dahdaleh Would Not Be Consistent With "Fair Play And Substantial Justice"**

Even were this Court to conclude that Mr. Dahdaleh has the requisite minimum contacts

with this forum to assert personal jurisdiction over him, it should decline to do so.  "Once it has

been decided that a defendant purposefully established minimum contacts within the forum

State, these contacts may be considered in light of other factors to determine whether the

assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger

King, 471 U.S. 462 at 476, (quoting Int'l Shoe Co., 326 U.S. at 320).  Courts may look to factors

such as "the burden on the defendant," "the forum State's interest in adjudicating the dispute,"

"the plaintiff's interest in obtaining convenient and effective relief," and other such factors,

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980), and "[t]hese

considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser

showing of minimum contacts than would otherwise be required," Burger King, 471 U.S. 462 at

477.

There is no reason to lessen the minimum contacts showing required here.  Whatever the

connection of Alcoa to this District, the dispute between Alba and Mr. Dahdaleh is between two

non-citizens regarding acts that allegedly occurred in Australia, Europe, and the Middle East and

caused injury in Bahrain.  In declining to exercise personal jurisdiction over a similarly distant

defendant, the Third Circuit has observed that where a dispute is "between two non-citizens . . .

regarding acts that took place in Taiwan that caused an injury in Great Britain," "the United States has, at best, a very limited interest in adjudicating" the matter.  BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 262 (3d Cir. 2000) (reversing preliminary injunction on grounds of lack of personal jurisdiction over a Taiwanese company for lack of minimum contacts with the United States).  As in BP Chemicals, there is no substantial interest of the United States here.

Were this Court to assert jurisdiction over him despite the paucity of his contacts here, there would be a very substantial burden on Mr. Dahdaleh.  He is not only a citizen of another country, he is currently charged in London with offenses arising from the same factual allegations asserted by Alba in this lawsuit, and his bail conditions do not allow him to travel outside of England and Wales.  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."  Asahi Metal Indus. Co.v. Super. Ct. of Cal., Solano Cnty, 480 U.S. 102, 114 (1987).  Asserting personal jurisdiction over Mr. Dahdaleh on these scant contacts and imposing such burdens on a man in his position would not accord with "'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co., 326 U.S. at 320 (quoting Miliken v. Meyer, 311 U.S. 457 (1940)).  Indeed, to do so would be an injustice.

## II.     PLAINTIFF'S RICO CLAIMS FAIL UNDER MORRISON

### A.     The RICO Statute Has No Extraterritorial Application

In Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010), the Supreme Court reaffirmed the presumption against extraterritorial application of U.S. statutes, holding that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none."  130 S.

Ct. at 2878.  Accordingly, following <u>Morrison</u>, courts must follow a bright-line rule:  Absent

clear Congressional expression of a statute's extraterritorial application, a statute lacks

extraterritorial reach.

This Court has held that because RICO is silent as to extraterritorial application, it has

none.  <u>In re Le-Nature's, Inc.</u>, No. 09-MC-162, 2011 WL 2112533, at *2 (W.D. Pa. May 26,

2011) ("Because the RICO statute does not contain evidence that Congress intended

extraterritorial application, <i>Morrison</i> has been held to preclude such application.").  That

conclusion has been joined in by every court to consider the question.  <u>See, e.g.</u>, <u>Cedeño v.</u>

<u>Castillo</u>, No. 10-CV-3861, 2012 WL 205960 (2d Cir. Jan. 25, 2012) (aff'g, <u>Cedeño v. Intech</u>

<u>Grp., Inc.</u>, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010)); <u>Norex Petroleum Ltd. v. Access Indus.</u>

<u>Inc.</u>, 631 F.3d 29, 33 (2d Cir. 2010) (affirming <u>Norex Petroleum Ltd. v. Access Indus., Inc.</u>, 540

F. Supp. 2d 438 (S.D.N.Y. 2007)); <u>In re Toyota Motor Corp.</u>, 785 F. Supp. 2d 883, 913 (C.D.

Cal. 2011); <u>United States v. Philip Morris USA, Inc.</u>, 783 F. Supp. 2d 23, 28 (D.D.C. 2011);

<u>CGC Holding Co., LLC v. Hutchens</u>, 11-Civ-01012, 2011 WL 5320988 at *13 (D. Colo. Nov. 1,

2011); <u>European Cmty. v. RJR Nabisco, Inc.</u>, No. 02-Civ-5771, 2011 WL 843957 at *4

(E.D.N.Y. Mar. 8, 2011).  Accordingly, RICO applies only to domestic claims.

Courts assessing RICO claims post-<u>Morrison</u> have varied in their views of the precise

"focus" of  the RICO statute, with some viewing the "focus" as the enterprise, others the pattern

of racketeering activity, and still others declining to decide the question.  <u>Cedeño v. Castillo</u>,

2012 WL 205960 (2d Cir. Jan. 25, 2012) ("it is unnecessary for us to decide what constitutes the

'object[]' of RICO's 'solicitude,' <u>Morrison</u>, 130 S. Ct. at 2884"); <u>Cedeño v. Intech Grp., Inc.</u>,

733 F. Supp. 2d at 473 ("it is plain on the face of the statute that the statute is focused on how a

pattern of racketeering activity affects an enterprise"); <u>Philip Morris</u>, 783 F. Supp. 2d at 29

(finding that RICO liability may not be premised on foreign activities of an enterprise); In re Le Nature's, Inc., 2011 WL 2112533 at *3 ("the enterprise is clearly an object of Congressional solicitude"). Courts have said even less about how, once the "focus" of the RICO statute is decided, to determine whether a particular application is domestic.  The Eastern District of New York has looked to the "nerve center test" used to determine the citizenship of a corporation for the purposes of diversity jurisdiction, in order to assess the location of an enterprise, RJR Nabisco, Inc., 2011 WL 843957 at *5-6, but no other court has articulated a particular theory for determining the location of a RICO offense.  This Court recognized in Le Nature's that "an associated-in-fact enterprise . . . might not have a distinct 'location' as does an enterprise that is a legal entity," 2011 WL 2112533 at *3 n.9, and therefore an assessment of such an enterprise's "nerve center" is not well-suited to the task at hand.  But regardless of the test to be applied to Alba's Amended Complaint, the offense as alleged is clearly foreign.

**B.      Alba's Attempt To Cloak The Foreign Enterprise In Domestic Garb Fails**

Alba drafted its Amended Complaint in a transparent effort to allege a domestic RICO enterprise that would survive Morrison scrutiny, but that effort was doomed to failure because the alleged victim, injury, conduct, contracts, and virtually all of the actors are foreign.  Despite Alba's best efforts to camouflage these facts, any reading of the Amended Complaint reveals the foreign nature of its alleged RICO enterprise.  The Complaint must therefore be dismissed.

The Court can best see the true nature of Alba's allegations by comparing its original Complaint, filed before Morrison and its progeny made clear that RICO does not apply to foreign enterprises, with the conclusory contortions of its Amended Complaint's effort to avoid the outcome dictated by Morrison.  The original Complaint alleged the following core facts:

- The victim, Alba, is in Bahrain.  Orig. Compl. ¶¶ 3, 13.

- Alba suffered its injury in Bahrain.  Orig. Compl. ¶¶ 18, 20.

- The alleged scheme concerned a series of contracts governing the sale of alumina from Western Australia to Alba's smelter in Manama, Bahrain.  These contracts were between and among non-US entities:  Alba, Alcoa of Australia, and various Dahdaleh Companies located in Singapore, Switzerland, Guernsey, and the British Virgin Islands.  Orig. Compl. ¶¶ 24, 28, 29, 33, 36, 38, 43, 50, 52, 59, 64, 84.

- The alleged bribe payments were to individuals in Bahrain and/or associated with Alba or the Government of Bahrain.  Orig. Compl. ¶¶ 18, 37, 53.

- There was an alleged attempt to negotiate a transaction for purchase of equity in Alba by Alcoa, which never came to fruition.  Orig. Compl. ¶¶ 17, 67, 72.

- The alleged enterprise through which the scheme was conducted consisted of any one of the following, pled in four alternative configurations:

  (A) An association-in-fact enterprise comprised of (i) Alcoa Inc., AWA, Mr. Dahdaleh, (ii) William Rice, (iii) the "Dahdaleh-controlled companies," (iv) "one or more former senior officers and former directors of Alba," (v) one or more former senior officials of the Government of Bahrain, (vi) "employees, officers and directors of Dahdaleh-owned companies (including David Dabney and Sandra Ainsworth)," (vii) and Alcoa of Australia.  Orig. Comp. ¶ 92.

  (B) Each of the "Dahdaleh-controlled companies" individually, as separate legally organized enterprises.  Orig. Comp. ¶ 93.

  (C) An association-in-fact enterprise comprised of the "Dahdaleh-controlled companies" together as a group.  Orig. Comp. ¶ 94.

  (D) Alba itself, as a legally organized enterprise.  Orig. Comp. ¶ 138.

Victor Dahdaleh is a foreign national who lives in a foreign country.  Each of the Dahdaleh Companies alleged to comprise or be a member of any of the above-alleged enterprises is foreign.  Alba is foreign.  Alcoa of Australia is foreign.  Thus, three of the enterprises alleged by Alba in its original Complaint, (B), (C) and (D), above, were comprised entirely of foreign members.  Of the numerous members in the alleged enterprise described in (A) above, all are foreign except for Alcoa Inc., AWA, and William Rice.  These three Defendants, who Plaintiff now asserts directed the entire scheme, were not alleged to be members of the other two alleged association-in-fact enterprises in the Original Complaint.

After <u>Morrison</u>, Alba filed its Amended Complaint which contains the same core factual allegations:

- The victim, Alba, is in Bahrain.  Am. Compl. ¶¶ 3-4.

- Alba suffered its injury in Bahrain.  Am. Compl. ¶ 22.

- The alleged scheme concerned a series of contracts governing the sale of alumina from Western Australia to Alba's smelter in Manama, Bahrain.  These contracts were between and among non-US entities:  Alba, Alcoa of Australia, and various Dahdaleh Companies located in Singapore, Switzerland, Guernsey, and the British Virgin Islands.  Am. Compl. ¶¶ 8, 20, 38, 40, 49, 54-57, 59, 73, 77, 80, 89, 98, 151.

- The alleged bribe payments were to individuals in Bahrain and/or associated with Alba or the Government of Bahrain.  Am. Compl. ¶¶ 14, 22, 52, 69, 75, 93, 103, 132, 136, 149-150.

- There was an alleged attempt to negotiate a transaction for purchase of equity in Alba by one of the Alcoa entities, which never came to fruition.  Am. Compl. ¶¶ 111-123.

In addition, the only alleged bribe payments identified in the Amended Complaint and Alba's RICO Case Statement are alleged to have been made by Mr. Dahdaleh or his companies outside the United States.[4]

Thus, the allegations of the Amended Complaint mirror those of the original Complaint, and have virtually nothing to do with the United States.  Mindful of <u>Morrison</u>, however, Alba has revised its alleged RICO enterprises.  First, Plaintiff alleges an association-in-fact comprised of the four defendants plus (i) Alcoa of Australia; (ii) the three Swiss AAAC entities; (iii) AAAC Limited (a Guernsey company); (iv) "employees, officers, and directors of the Dahdaleh-owned companies," including David Dabney, David Debney, Angela Hill, and Sandra Ainsworth (none of whom are alleged to have worked in the U.S.); (v) "one or more former officers and former directors of Alba"; and (vi) "one or more former senior officials of the Government of Bahrain." Am. Compl. ¶ 166.  Gone are the entirely foreign enterprises from the Original Complaint,

---

[4] <u>See</u> note 2, <u>supra</u> page 6.

composed of the Dahdaleh Companies individually, the Dahdaleh Companies as a group, and Alba itself.  In their place, Plaintiff has fabricated a new alternative alleged enterprise comprised only of Alcoa Inc., AWA, Mr. Dahdaleh and Mr. Rice, despite having originally pleaded alternative enterprises that did not include any of those defendants.  Am. Compl. ¶¶ 167-69; see also Am. Compl. ¶¶ 13, 60, 82, 106, 167.

Narrowing the scope of the enterprise to include principally U.S. defendants cannot hide the foreign nature of the scheme alleged by Alba.  The pleading history and the plain structure of the scheme alleged make clear that the offense complained of involved injury to a foreign plaintiff regarding foreign contracts to supply alumina from Australia to Bahrain, involving companies incorporated everywhere in the world but the United States.[5]

Alba's claim that the enterprise was domestic rests on the conclusory allegation that the conspiracy "was conceived, directed, controlled, and coordinated in and from the United States by senior executives of Alcoa and Alcoa World Alumina, including Rice."  Am. Compl. ¶ 2.  While Alba has sprinkled this allegation throughout its Amended Complaint, it is not supported by particularized allegations of which Alcoa executives did what to "conceive[], direct[], control[], and coordinate[]" the scheme from the United States.[6]  Following Iqbal, Alba may not

---

[5] Showing its sensitivity to the distinction between defendant Alcoa Inc., an American company, and Alcoa of Australia, an Australian company, in its Amended Complaint Alba has replaced "Alcoa of Australia" with "Alcoa's subsidiary" or "Alcoa, through its subsidiary."  Compare:

Orig. Compl. ¶ 33 with Am. Compl. ¶ 46
Orig. Compl. ¶ 36 with Am. Compl. ¶ 49
Orig. Compl. ¶ 39 with Am. Compl. ¶ 54
Orig. Compl. ¶ 42 with Am. Compl. ¶ 61

[6] Conclusory allegations of direction from the United States or on behalf of US entities can be found in ¶¶ 27, 37, 55, 60, 61, 69, 76, 82, 168, and 169 of the Amended Complaint.  As an example, ¶ 69 alleges:

rely upon conclusory allegations but must instead plead "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"   Iqbal,129 S.Ct. at 1940 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Alba attempts to particularize its claim that the enterprise "was predominantly domestic" by alleging that "its fraudulent activities were conceived, planned, orchestrated, directed, and controlled from the United States by Defendants Alcoa and Alcoa World Alumina, and senior executives of those companies, including Defendant Rice, for the benefit of Defendants Alcoa and Alcoa World Alumina, *as evidenced by*" a series of allegations.  Am. Compl. ¶ 168 (emphasis added).  But these allegations fail to support Alba's claim:  Some do not allege any connection to the United States at all, others are wholly conclusory, and what little remains is simply insufficient to overcome the threshold set by the Morrison Court, which observed that "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case."  Morrison, 130 S. Ct. at 2884.

In particular, Alba alleges that Peter Burgess, an AWA (and therefore U.S.) employee, signed two contracts in 1996 which, together with pricing correspondence, notified him that a distributor "would pay prices significantly lower than the prices paid by Alba."  Am. Compl. ¶ 168(a).  Alba does not allege that Burgess signed the contracts in the United States, and omits that the contracts were between Alcoa *of Australia* on the one hand and Alba and Alumet Limited, one of the foreign Dahdaleh Companies, on the other.  Declaration of David C. Esseks

---

Upon information and belief, Alcoa and Alcoa World Alumina directed Alcoa's subsidiary to pay the unlawful commissions with the knowledge and intent that such payments would be transferred on as bribes.

The Amended Complaint contains no non-conclusory allegations substantiating that claim or any of the other similar allegations.

("Esseks Declaration"), dated January 27, 2012, Exs. B and C (copies of the 1996 agreements). That an employee of a U.S. company signed two contracts on behalf of an Australian company does not establish control of  the enterprise by the U.S. company or otherwise make this a "predominantly domestic" enterprise.

Alba also alleges that two distribution agreements allowed the Dahdaleh Companies to use Alcoa's trademarked logo, and alleges, "[u]pon information and belief," that this was authorized by Alcoa executives in order to "further the false impression that the Dahdaleh-owned shell companies were simply Alcoa associates." Am. Compl. ¶ 168(d).  But, again, the agreements authorizing the use of the Alcoa logo were between Alcoa of Australia and non-US Dahdaleh Companies.  The conclusory and non-particularized allegation of involvement by Alcoa Inc. is "upon information and belief," and the allegation of Alcoa's fraudulent intent is not plausible in light of the explicit provision in the contracts at issue that the Alcoa mark may not be used where "the impression is created by use of the Licensed Mark that the public will be dealing with the Company [Alcoa of Australia] rather than the Distributor."  Esseks Decl., Ex. D at 13. See Iqbal, 129 S. Ct. at 1949-51 (only plausible claims are sufficient to state a claim for relief; the court, drawing on its "judicial experience and common sense," must determine whether the complaint's factual allegations nudge the claim "'across the line from conceivable to plausible'"; allegations that are "'merely consistent with'" a defendant's liability, or that raise a "sheer possibility" that a defendant has acted unlawfully, are not sufficient) (quoting Twombly, 550 U.S. at 557).

Alba also alleges that William Rice, an employee of AWA, sent a fraudulent letter to Alba in 2001, was involved in negotiating a contract that same year, and sent another allegedly fraudulent letter to Alba in 2005 in connection with another contract negotiation.  Am. Compl. ¶¶

168(b), (d), (g), and (h).  Whatever view one takes of these allegations against Rice, they do not support Alba's claim that the enterprise "was predominantly domestic" because "its fraudulent activities were conceived, planned, orchestrated, directed, and controlled from the United States by Defendants Alcoa and Alcoa World Alumina."  Am. Compl. ¶ 168.  Plaintiff pleads that the defendants schemed against Alba from as early as 1990, but identifies only Rice as taking any step in furtherance of the scheme from the United States, and that not until 2001.  Certainly Rice did not "conceive" the fraudulent activities if they began, as alleged, in 1990.  The Amended Complaint is utterly silent on who did.  And the allegation that Alain Belda, Alcoa Inc.'s Chairman and CEO, "traveled from the United States to Bahrain for site visits during due diligence," Am. Compl. ¶ 168(f), in connection with the potential 2004 investment by Alcoa in Alba, an investment which never took place, fares no better, as the Amended Complaint is devoid of any particularized allegation that Belda or anyone else at Alcoa knew of the payments that Mr. Dahdaleh is alleged to have made.  See infra Point III.

In short, Alba attempts to establish that this alleged twenty-year scheme to defraud a Bahraini company through bribery was controlled from the United States based on a few paragraphs about one Alcoa executive in the United States who is alleged to have done nothing before 2001 and whose alleged knowledge of the core bribery conduct is not particularized in any fashion.

Allegations that racketeering activity abroad was controlled and directed from the United States have failed to save a similar RICO complaint from dismissal in light of Morrison.  In Norex Petroleum Limited v. Access Industries, Inc., the Second Circuit affirmed the dismissal of a RICO complaint, holding that "simply alleging that some domestic conduct occurred cannot support a claim of domestic application."  631 F.3d 29, 33 (2d Cir. 2010).  The amended

complaint in <u>Norex</u> alleged a scheme to take over part of the Russian oil industry through bribery and fraud.  Esseks Decl., Ex. A at ¶¶ 1, 10.  The "some domestic conduct" that was insufficient to save the claim under <u>Morrison</u> included the following allegations:

- "Defendants operated and directed the Illegal Scheme from [the Southern District of New York]."  Esseks Decl., Ex. A at ¶ 2;

- Ten of the 35 defendants were U.S. companies or citizens.  Esseks Decl., Ex. A at ¶¶ 17-20, 35, 37, 42, 43, 49-50;

- US investors were directly harmed as a result of the scheme Esseks Decl., Ex. A at, <u>e.g.</u>,  ¶¶ 85-88;

- The United States itself was directly harmed.  Esseks Decl., Ex. A at ¶ 89; and

- One alleged enterprise was comprised entirely of U.S. companies and individuals.  Esseks Decl., Ex. A at ¶¶ 17-20, 241.

Like Alba, the <u>Norex</u> plaintiff was foreign.  Like Alba, Norex alleged a long-running and worldwide racketeering scheme where most of the acts occurred outside the U.S.  Unlike this lawsuit, Norex alleged harm in the U.S. and an enterprise consisting entirely of U.S. persons.  But the Second Circuit, noting the Supreme Court's observation that it is "'a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States,'" <u>id.</u> at 33 (quoting <u>Morrison</u>, 130 S. Ct. at 2884), affirmed the dismissal of the complaint, finding that "the slim contacts with the United States alleged by Norex are insufficient to support extraterritorial application of the RICO statute."  <u>Id.</u>

In short, the RICO offense is as foreign as that alleged in <u>Norex</u>, and cannot survive scrutiny under <u>Morrison</u>.

III.   **ALBA'S RICO CLAIMS FAIL BECAUSE IT HAS NOT PLED WITH PARTICULARITY AN ENTERPRISE WITH A COMMON PURPOSE**

Alba's RICO claims must be dismissed because it has not alleged with particularity the requisite elements of an association-in-fact enterprise.  Specifically, Plaintiff has failed to plead with particularity that the members of its alleged enterprise operated with a common purpose.

A.   **An Association-In-Fact Enterprise Requires A Common Purpose**

"To plead a RICO claim under § 1962(c), 'the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (quoting Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)).  In pleading an association-in-fact enterprise, a plaintiff must establish the existence of the enterprise, which in turn requires plaintiff to allege with particularity three structural features: (1) a common purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.  Boyle v. United States, 556 U.S 938, 129 S. Ct. 2237, 2244 (2009); In re Ins. Brokerage, 618 F.3d at 365 (Plaintiff is required to allege facts to support the allegation that this was "a group of persons associated together for a common purpose of engaging in a course of conduct.") (emphasis added) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

"[I]t is clear after Twombly that a RICO claim must plead facts plausibly implying the existence of an enterprise with the structural attributes identified in Boyle:  a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  In re Ins. Brokerage, 618 F.3d at 369-70 (quoting Boyle, 129 S. Ct. at 2250.  In re Insurance Brokerage, the Third Circuit affirmed the dismissal of RICO claims against a group of insurers accused of a fraudulent scheme, stating that "because plaintiffs' factual allegations do not plausibly imply anything more than parallel

conduct . . . they cannot support the inference that the insurers 'associated together for a common purpose of engaging in a course of conduct.'"   Id., at 374.   Other courts have dismissed RICO claims for failure to plead with particularity the existence of the enterprise, including its common purpose.   Rao v. BP Prod. N.  Am., Inc., 589 F.3d 389, 400 (7th Cir. 2009) (upholding dismissal of RICO claims because, *inter alia*, the plaintiff's allegations "do not suggest a group of persons acting together for a common purpose or course of conduct"); Elsevier Inc. v. W.H.P.R., Inc., 692 F. Supp. 2d 297, 306-07 (S.D.N.Y. 2010) (finding that a complaint failed to plead an association-in-fact enterprise because it did not plausibly "tie[] together the various defendants allegedly comprising the association in fact into a single entity that was formed for the purpose of working together-acting in concert-by means of mail and wire fraud").

### B.      Alba Alleged A Scheme To Defraud It Through Bribery

Alba alleged a scheme to defraud it through bribery:

For nearly twenty years, between 1990 and 2009, Defendants defrauded Alba by bribing officials of Alba and the Government of Bahrain . . . .  Am. Compl. ¶ 22.

As part of Defendants' conspiracy to defraud Alba, Defendants funneled the payments received from Alba, and the *quid pro quo* bribes paid to officials of Alba and the Government of Bahrain, through a series of overseas shell companies that were controlled and beneficially owned by Dahdaleh and ultimately directed and operated by Defendants in furtherance of their fraudulent conspiracy.  Am. Compl. ¶ 23.

[T]he Dahdaleh-owned shell companies . . . . were created and operated by Defendants for the sole purpose of facilitating Defendants' receipt and distribution of the overpayments that were fraudulently exacted from Alba and the Defendants' *quid pro quo* payment of bribes to senior officials of Alba and the Government of Bahrain.  Am. Compl. ¶ 25.

[T]he purpose of the conspiracy was to divert money from Alba to Defendants' own benefit by facilitating the payment of bribes, retaining Alba's lucrative and nearly exclusive business, overcharging Alba for alumina and otherwise defrauding Alba. RICO Case Statement at 51.

**C.      Alba Has Not Alleged With Particularity That Anyone At Alcoa Agreed To
The Alleged Bribery**

For all the 229 paragraphs of the Amended Complaint, the 59 pages of the RICO Case

Statement, and the 84 pages of exhibits to the Case Statement, Alba has utterly failed to allege

with particularity that anyone at Alcoa knew of and agreed to the bribe payments that it alleges

Mr. Dahdaleh made.  Without non-conclusory allegations supporting that common purpose,

Alba's complaint fails to state a claim.

The Amended Complaint is littered with conclusory allegations regarding Alcoa's

knowledge of bribery, for instance:

> Upon information and belief, Dahdaleh, as the agent of Alcoa and its subsidiaries,
> including Alcoa World Alumina and Alcoa of Australia, made these payments
> with the knowledge and at the direction of Alcoa, Alcoa World Alumina, and
> Rice.

Am. Compl. ¶ 118.  But the Complaint contains no factual allegations to support that "upon

information and belief" speculation.  The closest it comes to supporting this particular claim is

the next paragraph, which alleges:

> During a meeting in London that representatives of the Government of Bahrain
> and consulting firm Roland Berger attended and at which they expressed
> dissatisfaction with the terms [for Alcoa's equity investment in Alba] offered by
> Alcoa, Rice and Dahdaleh maintained that Alba was taking the "wrong position."
> Rice and Dahdaleh asserted that Defendants had access to the highest authorities
> in Bahrain and that those authorities wanted the transaction completed and would
> approve Alcoa's proposed price.

Am. Compl. ¶ 119.  But Mr. Rice telling Alba that it was taking the "wrong position" and that

the "highest authorities in Bahrain" "wanted the transaction completed and would approve

Alcoa's proposed price" does not even suggest that Mr. Rice knew that Mr. Dahdaleh was

allegedly making payments to anyone in Bahrain, especially when the "Minister of Finance and

National Economy of Bahrain" was openly involved in these discussions and making decisions

relating to the negotiations and proposed transaction.  Am. Comp. ¶ 120.  Once Plaintiff's

conclusory statements that the bribery scheme was directed by Alcoa are excised, there is nothing left.  Iqbal, 129 S. Ct. at 1949-50 (in considering a motion to dismiss, the court must "identify [] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth").  Without particularized allegations of a shared purpose of the enterprise members to "defraud[] Alba by bribing," Am. Compl. ¶ 22, Alba has failed to properly plead an enterprise with a common purpose and the RICO claims fail.

Alba's RICO conspiracy claim fails for the same reason.  "A § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'"  In re Ins. Brokerage, 618 F.3d at 373 (quoting Salinas v. United States, 522 U.S. 52, 65 (1997)).  Accordingly, because Alba has failed to allege a common purpose for the existence of the alleged association-in-fact enterprise, its RICO conspiracy claim must also be dismissed.

## IV.  PLAINTIFF'S STATE LAW CLAIMS AGAINST VICTOR DAHDALEH MUST BE DISMISSED

### A.  Plaintiff Has Failed To State A Fraud Claim As To Victor Dahdaleh

In order to plead a claim for fraud, Plaintiff must allege, with plausible factual support and with particularity under Rule 9(b), the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 275 (3rd Cir. 2010).  Fraud claims must be dismissed if they do not meet the particularized pleading standard of Rule 9(b).  Freedom Med. Inc. v. Gillespie, 634 F. Supp. 2d 490, 516 (E.D. Pa. 2007) ("[n]one of these allegations adequately alleges fraud with particularity against any of the moving defendants" and

"are therefore insufficient to satisfy Rule 9(b) and must be dismissed.")  Plaintiff has failed to allege with particularity any specific false representation made by Mr. Dahdaleh to Alba.  This is plainly insufficient given the particularized pleading requirements for fraud.  See Midnet, Inc. v. Pharmacia Corp., 03-CV-4782, 2005 WL 1385906,  (3d Cir. June 13, 2005) ("When multiple defendants are involved [in a claim for fraud], the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant.) (citing Cinalli v. Kane, 191 F. Supp. 2d 601, 609 (E.D. Pa. 2002)).  Accordingly, this claim must be dismissed.

**B.     Plaintiff Has Failed To State A Claim For Civil Conspiracy**

Plaintiff's conspiracy claim fails because, as explained in Section III, *supra*, the Amended Complaint does not contain any particularized allegation of an agreement between Mr. Dahdaleh and any other person to participate in the alleged fraudulent bribery scheme.  To state a claim for civil conspiracy, a plaintiff must meet Iqbal's pleading standard for the following elements: (1) a combination of two or more persons acting with a common purpose to do an unlawful act; (2) an overt act done in pursuance of the common purpose; and (3) actual damage. Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003).  Plaintiff has offered nothing more than wholly conclusory statements to support the idea that anyone at Alcoa agreed to the alleged payment of bribes by Mr. Dahdaleh or anyone else.  See Section III, *supra*.  This claim must be dismissed.

**V.     VICTOR DAHDALEH JOINS IN THE MOTIONS TO DISMISS FILED ON BEHALF OF ALCOA INC., ALCOA WORLD ALUMINA LLC, AND WILLIAM RICE.**

Mr. Dahdaleh joins in the Motions to Dismiss filed on behalf of Alcoa Inc., AWA and William Rice, respectively, each dated January 27, 2012.

## **<u>CONCLUSION</u>**

For the above reasons, Defendant Victor Dahdaleh respectfully requests that the Court grant his motion to dismiss the Amended Complaint with prejudice and grant such other and further relief as the Court may consider appropriate.

Dated: January 27, 2012
New York, New York

                             Respectfully submitted,

/s/ David J. Berardinelli                    /s/ David C. Esseks
David J. Berardinelli (Pa. ID No. 79204)     Michael S. Feldberg
DEFOREST KOSCELNICK YOKITIS                  David C. Esseks
SKINNER & BERARDINELLI                       Carrie Baker Anderson
436 Seventh Avenue                           ALLEN & OVERY LLP
Pittsburgh, PA 15219                         1221 Avenue of the Americas
Tel. (412) 227-3100                          New York, New York 10020
Fax. (412) 227-3130                          Telephone: (212) 610-6300

                                             *Attorneys for Defendant Victor Dahdaleh*