IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALUMINUM BAHRAIN B.S.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 8-299 |
| ) | |
| ALCOA INC., ALCOA WORLD ALUMINA ) | |
| LLC, WILLIAM RICE and VICTOR ) | |
| DAHDALEH, ) | |
| ) | |
| Defendants. ) | |

AMBROSE, District Judge

OPINION
and
ORDER OF COURT

Defendants Alcoa Inc. ("Alcoa") and Alcoa World Alumina LLC ("AWA") (referred to collectively as "the Alcoa Defendants"), seek the dismissal of Plaintiff Aluminum Bahrain B.S.C.'s ("Alba's") Amended Complaint. (See ECF Docket No. [70]). The Amended Complaint contains four claims, all of which are asserted against the Alcoa Defendants: violation of RICO, 18 U.S.C. § 1962(c); conspiracy to violate RICO, 18 U.S.C. § 1962(d); fraud; and civil

1

conspiracy to defraud. The Alcoa Defendants challenge the viability of each of these claims. After careful consideration, and for the reasons set forth below, the Motion is denied.

Standard of Review

"'In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.'" Robinson v. County of Allegheny, Civ. No. 9-4681, 404 Fed. Appx. 670, 2010 WL 5166321 at * 2 (3rd Cir. Dec. 21, 2010), *quoting*, McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009). "To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Robinson, 2010 WL 5166321 at * 2, *quoting*, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim is plausible if it 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct that is alleged.'" Holmes v.Gates, 403 Fed. Appx. 670, 2010 WL 5078004 at * 1 (3rd Cir. Dec. 14, 2010), *quoting*, Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Holmes, 2010 WL 5078004 at * 1, quoting, Iqbal, 129 S. Ct. at 1949. "'A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id. (internal quotation marks and brackets omitted). "'Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (citations omitted).

Analysis

I. Count I – RICO

In Count I, Alba contends that the Alcoa Defendants, together with Victor Dahdaleh and William Rice, violated RICO, 18 U.S.C. § 1962(c). "To plead a claim under § 1962(c), 'the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 362 (3d Cir. 2010), *quoting*, Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) and Sedima, S.P.R. L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3292, 87 L.Ed.2d 346 (1988). The Alcoa Defendants challenge the sufficiency of Alba's claims with respect to the second and fourth elements.

    (a) Domestic / Foreign Enterprise

The RICO statute defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Alba offers two alternative definitions of

3

"enterprise."[1] The Alcoa Defendants contend that Alba's identification of the "enterprise" in the Amended Complaint and RICO Case Statement is foreign rather than domestic in nature. As such, they urge, applying RICO to the facts alleged here would be an extraterritorial application of the statute in violation of the Supreme Court's decision in Morrison v. National Australia Bank Ltd., __ U.S. __, 130 S. Ct. 2869 (2010).

In Morrison, the Supreme Court considered whether § 10(b) of the Securities and Exchange Act of 1934 had extraterritorial application. In finding that it did not, the Court confirmed the "longstanding principal of American law that …, unless there is the affirmative intention of Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions." Morrison, 130 S. Ct. at 2877 (internal quotation marks and citations omitted). I have previously acknowledged that the Morrison decision has been understood to preclude extraterritorial application of RICO. See In re Le-Nature's, Inc., Civ. No. 9-mc-196, 2011 WL 2112533 at * 2 (W.D. Pa. May 26, 2011) (citations

---

[1] Specifically, Alba contends that Alcoa, AWA, Dahdaleh and Rice together with (1) the Dahdaleh-owned companies; (2) one or more former officers and former directors of Alba; (3) one or more former senior officials of the Government of Bahrain; (4) employees, officers and directors of Dahdaleh-owned companies and (5) Alcoa of Australia formed an association-in-fact for a common and continuing purpose and constituted an enterprise within the meaning of 18 U.S.C. § 1961(4). In the alternative, Alba urges that the Alcoa Defendants, Dahdaleh, Rice and the Dahdaleh-owned companies, together constitute an enterprise within the meaning of 18 U.S.C. 1961(4).

omitted).  The Alcoa Defendants contend that the facts alleged here suggest an enterprise which is "essentially foreign." I disagree.[2]

After careful review of the facts alleged both in the Amended Complaint and the RICO Case Statement,[3] I find that the 12(b)(6) challenge lacks merit.  For instance, Alba describes a scheme to defraud which was conceived, orchestrated and directed by Alcoa, AWA and its senior executives.  Alba identifies each of these members of the enterprise as domestically located.  See Amended Complaint, ¶¶5-7.  Alba clearly alleges that Alcoa controlled Alcoa of Australia, being that it was a 60% shareholder. See Amended Complaint, ¶ 12.[4]  Further, it is unquestioned that all of the alumina involved in the alleged scheme was supplied by Alcoa of Australia.  See Amended Complaint, ¶ 20.  Alba also alleges that Alcoa, through Alcoa of Australia, entered into a series of "Agency Agreements" between 1990 – 2004 with Dahdaleh through his company Alumet Limited. See Amended Complaint, ¶ 39. That contract was later extended.

---

[2] Because I find that the Amended Complaint survives this challenge, I need not address Alba's contention that Morrison does not bar extraterritorial application of RICO. See ECF Docket No. [85], p. 32.

[3] I am entitled to consider the facts alleged in both the Amended Complaint and the RICO Case Statement in assessing whether Alba has stated sufficient factual matter which, if accepted as true, would suggest a domestic enterprise. See Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993) and Glessner v. Kenny, 952 F.2d 702, 712 n. 9 (3d Cir. 1991).

[4] Alcoa may dispute the accuracy of Alba's assertions in this regard, but that is a matter for resolution at a later date.

Alba also alleges that Alcoa, through Alcoa of Australia, paid Dahdaleh and Alumet Limited, more than $13.5 million in "commissions." See Amended Complaint, ¶¶ 39-40. Alba alleges that these "commissions," paid by Alcoa through the subsidiary that it directed and controlled, were made to compensate Dahdaleh for facilitating the payment of bribes to senior officials of Alba and the Government of Bahrain, to distribute the proceeds of the fraudulent scheme to the Defendants and to camouflage the Defendants in the cloak of Dahdaleh's various corporate aliases. See Amended Complaint, ¶ 42. Again, all of these decisions and directions were happening in Pittsburgh, Pennsylvania.

Alba also alleges that executives with the Alcoa Defendants were directly involved in various contract negotiations for the 1990 Contract and the various extensions and assignments thereafter. For instance, Alba contends that Peter Burgess, Sales and Marketing Manager for Alcoa World Alumina in Pittsburgh, Pennsylvania, signed the 1996 Amendment on behalf of Alcoa of Australia. See Amended Complaint, ¶ 55. Alba contends that he did so at the direction of Alcoa and Alcoa World Alumina. Id. Again, the direction came from Pittsburgh. Burgess was also involved in the setting of the price for the "Market Tonnage" as part of that contract. See Amended Complaint, ¶ 56. Additionally, Burgess is alleged to have signed a 1996 Sales Agreement on behalf of Alcoa of Australia, while acting at the direction of Alcoa and Alcoa

6

World Alumina with Dahdaleh-owned Alumet Limited. See Amended Complaint, ¶¶ 59, 61. The control of the enterprise, the decision-making vital to the sustainability of the enterprise, came from Pittsburgh.

Alba also alleges that, in 2001, an extension of the 1990 contract was proposed by Alcoa World Alumina through its officer, William Rice, by an April 21, 2001 letter on Alcoa World Alumina stationary sent from Pittsburgh, Pennsylvania. See Amended Complaint, ¶ 74. In that letter, Rice referred to the 1990 Contract as "our present purchase agreement" and expressed a desire to "continue the relationship we have had for 30 years." Id. The reference to "our" and "30 year" relationship can fully be understood to mean Alcoa – located in Pittsburgh. Again – there was no lengthy history between Alba and the Dahdaleh companies. Indeed, there was no history at all. Alba contends that Rice and other senior executives of Alcoa and Alcoa World Alumina "knowingly directed the negotiation and signature of two contracts – one with Alba and the other with Dahdaleh – for the sale of the same quantity of alumina." See Amended Complaint, ¶ 76. According to Alba, Rice's initials also appear on each page of the secret 2002 Distribution Agreement with Alumet Limited and AA Alumina and Chemicals Limited, which provided for the sale of alumina to the Dahdaleh-owned shell companies with the knowledge

and intent that the same alumina would be re-sold to Alba at substantially higher prices. See RICO Case Statement, p. 11.

Alba also alleges that David Dabney, a former Alcoa employee, actually signed the 2001 Extension on behalf of Alcoa of Australia even though he was not actually an employee or representative of Alcoa of Australia but rather an employee of a Dahdaleh-owned entity. See Amended Complaint, ¶ 78. Indeed, according to Alba, Rice encouraged confusion in this regard by faxing information to Alba's purchasing manager and copying "Mr. David Dabney, Alcoa of Australia" on the fax. See RICO Case Statement, p. 11.

Additionally Alba alleges that Alcoa of Australia, while acting at the direction of Alcoa and Alcoa World Alumina, represented to Alba that Dahdaleh's various corporate entities were "associated" with Alcoa of Australia and, thereby, with Alcoa. See Amended Complaint, ¶ 62, 138, 147.  Alba also alleges that, on several different occasions, Dahdaleh's various corporate entities bore Alcoa logos with the knowledge of the Alcoa Defendants and for the express purpose of fostering the deception that Alba was dealing with Alcoa subsidiaries. See Amended Complaint, ¶¶ 86(e), 88, 100, 147.

Alba similarly contends that Rice participated in direct email exchanges with the CEO of Alba, who was a direct recipient of the bribes at issue, about Dahdaleh and his activities, prior to the CEO's visit to an Alcoa plant in Tennessee. See Amended Complaint, ¶ 90.

Finally, Alba sets forth a chart detailing the price for alumina paid by Alba, the price paid by Dahdaleh, and the margins made by the Alcoa Defendants. See Amended Complaint, ¶ 157. This cash would have flowed into the books of domestic corporations. "Defendants paid the bribes to individuals who exercised the power to influence the decision-making process and ensure that Alba continued to deal with Defendants and overpay for alumina. Defendants intended for the payments to induce the officials to misuse their authority to direct business to Alcoa at inflated prices, and to obtain an improper advantage by practically eliminating competition for Alba's alumina supply." See RICO Case Statement, p. 28. Additionally, Alba has proffered evidence that the Alcoa Defendants caused the issuance of invoices which resulted in the deposit of funds in several accounts held at financial institutions in New York, including the Royal Bank of Canada, New York and Chase Manhattan Bank, New York. See RICO Case Statement, Exs. 19, 20, 21, 22.

I find these allegations sufficient to withstand a Rule 12(b)(6) challenge. They differ in breadth and substance from those referenced in the handful of cases cited by the Alcoa

9

Defendants. For instance, the Alcoa Defendants cite to the Second Circuit Court's decision in Norex Petroleum, Ltd. v. Access Indus., Inc., 631 F.3d 29 (2d Cir. 2010), in support of its contention that dismissal is warranted here.  At first blush, the analogy is appealing.  In Norex, the plaintiff was foreign, complaining of a conspiracy involving a foreign industry.  Yet further analysis reveals the analogy wanting.  In Norex, the court focused its analysis on determining whether a Morrison assessment should be done under the guise of subject matter jurisdiction or a failure to state a claim.  Deciding on the latter, the court provided little commentary on what quality and quantity of contacts would qualify an enterprise as "domestic" under Morrison rather than "foreign." To the extent that one considers the district court's opinion, Norex v. Access Industries, 540 F. Supp.2d 438 (S.D. N.Y. 2007), the court engaged in a "conducts" test – the test rejected by the Supreme Court in Morrison and by me in In re Le-Nature's Inc., Civ. No. 9-1445, 2011 WL 211533 at * 2 n. 5 (W.D. Pa. May 26, 2011).

      I find the Alcoa Defendants' reliance upon the other cases to be misplaced as well. See for instance European Community v. RJR Nabisco, Inc., Civ. No. 2-5771, 2011 WL 843957 at * 5-7 (E.D. N.Y. March 8, 2011) (finding that a court should assess the geographic location of a RICO enterprise by considering the "nerve center" of the enterprise – the place where the enterprise is coordinated – allegations which Alba has made occurred here as compared with

10

the allegation in European Community, where "the Complaint very clearly and repeatedly articulates that the 'overall corporate policy' regarding these steps originated with organizations in Europe and South America."); and Sorota v. Sosa, Civ. No. 11-80897, 2012 WL 313530 at * 5 (S.D. Fla. Jan. 31, 2012) (finding that the enterprise was foreign where it was "operated entirely in Peru, with its only connection to the United States being that the funds it possessed originated from (and possibly returned to) a Florida bank account.").

      (b) Particularized Facts Regarding Alcoa's Role

The Alcoa Defendants similarly allege that Alba has failed to allege particularized facts describing how the Alcoa Defendants participated in the RICO enterprise or the alleged racketeering scheme. Their argument in this regard consists of two paragraphs and amounts to nothing more than a repeat of previously addressed contentions that Alba failed to include particularized allegations that the Alcoa Defendants conceived of or controlled the RICO enterprise or were involved with the alleged bribes. For the reasons set forth above, I reject the Alcoa Defendants' arguments in this regard.

    II. Count 3 - Common Law Fraud

The Alcoa Defendants urge that Alba has failed to plead the common law elements of a fraud claim with sufficient particularity. "To establish common law fraud under Pennsylvania law,

a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Bernard v. Verizon Communications, Inc., 451 Fed. Appx. 80, 85-86 (3d Cir. 2011), *quoting*, Hunt v. U.S. Tobacco Co., 538 F.3d 217, 225 n. 13 (3d Cir. 2008) (internal brackets and quotation marks omitted).  Further, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

I reject the Alcoa Defendants' contentions that Alba has not asserted a common law claim of fraud with sufficient particularity.  With respect to the Alcoa Defendants' alleged misrepresentations of material fact, scienter, and the intent to induce action, the Amended Complaint contains numerous affirmative allegations which more than satisfy the pleading requirements. See, for instance, Amended Complaint, ¶¶ 67-68 (representing that the assignment of the Market Tonnage under the 1996 Amendment was necessary to avoid disclosure of Alcoa's pricing when the true reason was to conceal and facilitate the payment of bribes); ¶¶ 138, 147-48 (falsely representing, during the negotiation of the 2005 Contract, that AA Alumina and Chemicals was an Alcoa subsidiary);  ¶¶ 85, 86(e), 88-89, 138, 147-48, RCS 11-12, 40-42, Exs. 4, 6 (alleging that the Alcoa Defendants authorized, in the secret 2002

"Distribution Agreement," the Dahdaleh-owned shell companies to use Alcoa's logo and trademarks in correspondence with Alba in order to foster the false impression that they were legitimate business enterprises and duly authorized affiliates of Alcoa).[5]

With respect to the sufficiency of pleadings regarding justifiable reliance and resulting damages – I find the pleadings to be adequate.  Alba has exhaustively alleged that the Defendants' fraudulent scheme caused it to enter into commercially unreasonable alumina purchase agreements that resulted in overpayments to the Defendants in excess of $400 million.  Consequently, I reject the argument that Count 3 should be dismissed.

### III. Counts 2 and 4 – Conspiracy Claims

The Alcoa Defendants urge that the RICO conspiracy claim and the civil conspiracy claim should be dismissed because the underlying claims are deficient.  I have already found that the underlying claims will proceed at this juncture.  Accordingly, the conspiracy claims will proceed as well.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

[5] The Alcoa Defendants allege that some of these alleged misstatements were in fact true and accurate statements. See ECF Docket No. [71], p. 36.  These are matters left to the trier of fact. Additionally, to the extent that the Alcoa Defendants contend that Alba cannot recover for fraud based upon nondisclosure, I am unwilling to foreclose the possibility of relief at this juncture, at least with respect to the payment of bribes. See Restatement (Second) of Agency § 312 and VFB LLC v. Campbell Soup Co., 482 F.3d 624, 634 (3d Cir. 2007) (acknowledging the existence of civil liability for knowingly aiding and abetting an agent's breach of a duty of loyalty to its principal).

| | | |
|---|---|---|
| ALUMINUM BAHRAIN B.S.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 8:299 |
| | ) | |
| ALCOA INC., ALCOA WORLD ALUMINA LLC, WILLIAM RICE and VICTOR DAHDALEH, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

AMBROSE, District Judge

## ORDER OF COURT

AND NOW, this 11th day of June, 2012, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motion to Dismiss (See ECF Docket No. [70]) is DENIED.

It is further ORDERED that the parties shall attend a Status Conference scheduled for June 25th, at 2:00 pm in the Courtroom of the Honorable Donetta W. Ambrose. Parties shall consult the Chamber's Rules prior to attending the Status Conference and shall comply with all

relevant procedures, including the preparation and tendering of a position statement.

        By The Court:

        <u>/s/ Donetta W. Ambrose</u>

        Donetta W. Ambrose

        Senior Judge, U.S. District Court