IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ALUMINUM BAHRAIN B.S.C.,

       Plaintiff,

     vs.

ALCOA, INC., ALCOA WORLD ALUMINA LLC,
WILLIAM RICE, and VICTOR DAHDALEH,

       Defendant.
_____

Civil Action

No. 2:08-CV-299-DWA


     Transcript of STATUS CONFERENCE PROCEEDINGS held
on Monday, June 25, 2012, in the United States District
Court, 700 Grant Street, Pittsburgh, Pennsylvania, before
The Hon. Donetta W. Ambrose, United States District Judge


APPEARANCES:

For the Plaintiff:          Mark J. MacDougall, Esq.
                               Akin, Gump, Strauss, Hauer
                                 & Feld, LLP
                               1333 New Hampshire Avenue, NW
                               Washington, DC  20036

                               Charles B. Gibbons, Esq.
                               Buchanan, Ingersoll & Rooney, PC
                               One Oxford Centre, 20th Floor
                               301 Grant Street
                               Pittsburgh, PA  15219

For Defendants Alcoa, Inc.
and Alcoa World Alumina:     David L. McClenahan, Esq.
                               Nicole A. Stockey, Esq.
                               K&L Gates
                               K&L Gates Center
                               210 Sixth Avenue
                               Pittsburgh, PA  15222

APPEARANCES:  (cont.)

For Defendants Alcoa, Inc.
and Alcoa World Alumina, LLC:  (via conference call)
                               Evan R. Chesler, Esq.
                               Julie A. North, Esq.
                               Cravath, Swaine & Moore, LLP
                               Worldwide Plaza
                               825 Eighth Ave.
                               New York, NY  10019

For Defendant William Rice:    Richard L. Beizer, Esq.
                               Amy S. Lee, Esq.
                               Crowell & Moring, LLP
                               1001 Pennsylvania Avenue, NW
                               Suite 1100
                               Washington, DC  20004-2595

For Defendant Victor Dahdaleh: David C. Esseks, Esq.
                               Michael S. Feldberg, Esq.
                               Carrie Baker Anderson, Esq.
                               Allen & Overy LLP
                               1221 Avenue of the Americas
                               New York, NY  10020

                               David J. Berardinelli, Esq.
                               DeForest, Koscelnik, Yokitis,
                                Skinner & Berardinelli
                               Koppers Building, 30th Floor
                               436 Seventh Avenue
                               Pittsburgh, PA  15219

Court Reporter:                Deborah Rowe, RMR, CRR
                               700 Grant Street, Ste. 5300
                               Pittsburgh, PA  15219
                               (412) 471-2510

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                    P R O C E E D I N G S

2                           - - -

3              (In open court, 2:00 p.m.)

4              THE COURT:  Good afternoon.  Mr. McClenahan called

5    our office this morning telling us there were people that

6    were not able to make it from New York?

7              MR. McCLENAHAN:  That's right, Your Honor.

8              THE COURT:  Are they on the phone?

9              THE CLERK:  Your Honor, they were disconnected.

10   I'll have to get them back on the phone.

11             THE COURT:  Okay.

12             (Brief pause.)

13             THE COURT:  Good afternoon.  This is Judge Ambrose

14   for those of you who are on the phone, because I do have a

15   court reporter here, which I normally don't at an initial

16   scheduling conference, but I just thought we would have one

17   here today.

18             We are here in the case of Aluminum Bahrain

19   against Alcoa, Inc., et al., at No. 8-299.  So I don't know

20   if you all have done anything since the motions to dismiss

21   were decided about conferring and trying to come up with a

22   joint case management order.  I assume that that would

23   probably be more productive than my just doing something

24   arbitrarily.

25             I would hope that you could agree.  If you could

1  not, I would certainly look at different versions and

2  quickly come up with a final.

3           But I want you all to know that I'm going to be

4  out of the country from right after the Fourth of July until

5  July 23.  So I would like to get an initial case management

6  conference done before that.

7           So that's one of the things that I want you to

8  address, and I want you to certainly pay close attention to

9  our local rules because we have a local rule specifically

10 addressing the discovery of electronically stored

11 information, and I would like, you know, to know that in the

12 Rule 26F report as well.

13          You all may know or may not know that we also have

14 a requirement for ADR in this Court, and that is a

15 requirement.

16          Now, I don't know if it is productive now.  Our

17 rule –– the default is that it should occur within 60 days

18 of today.  That might be difficult in this case.  I don't

19 know if you can do that or if perhaps you might need a

20 little discovery before we do that.

21          I'm not sure.  These are things I'm going to have

22 to learn from you, but we do have that, and it is a

23 requirement, and I don't see any reason that this case would

24 be exempted from that requirement.

25          So those are the kinds of things we're talking

1    about today, hopefully getting an order in place.  And since

2    I didn't get anything from you before today in terms of a

3    stipulated case management order, I assume that that has not

4    been done yet.

5           So who wants to talk and tell me about what your

6    plans are for getting together and coming up with some

7    deadlines for fact discovery?  I would only ask that you

8    please identify yourself for the record before you speak.

9    So does someone want to speak on behalf of the Plaintiff?

10          MR. MacDOUGALL:  Mark MacDougall for Aluminum

11   Bahrain, B.S.C.  We're certainly prepared, and I'm sure

12   counsel for the Defendant as well, to sit down or

13   telephonically put together a case management order or at

14   least try to very quickly.

15          THE COURT:  What I would want you to do is at

16   least talk about the completion of fact discovery.  Maybe --

17   and I'm not sure because I'm not sure what kind of experts

18   you would have in this case, but perhaps even the completion

19   of expert discovery and expert depositions.

20          I don't intend to go any further than that in

21   terms of an order at this time because it's my practice that

22   when discovery is complete, we get together again if the

23   case is still ongoing; and then if the case is not going to

24   resolve in some other way, I will give you 30 days to file

25   dispositive motions, and I will rule on those dispositive

1    motions; and when I rule on the dispositive motions, we get

2    together another time, and then you would have a trial date.

3            And I can tell you that even though it seems like

4    that's far in the distant future -- and it might be, but

5    might not -- that when I give you the trial date, it won't

6    be so far away -- it won't be years away.  It will be months

7    away.  And of course, depending -- there's so many lawyers

8    involved -- depending on what your schedules are as well.

9            So I just wanted you to know that when you get

10   together, what I would really want from you is fact

11   discovery, perhaps expert, unless you think there's a reason

12   to get together after fact discovery and before experts, and

13   you can let me know that.

14           And the ADR process that you intend to engage in,

15   and if you can agree on someone to be the mediator, we have

16   three options of ADR.  I really think mediation is the

17   option for this case.  That's my opinion.

18           I mean I don't think that the early neutral

19   evaluation is going to help as much as it does in some other

20   cases.  And I don't see any reason why you would opt for

21   arbitration either.  So I think that mediation is probably

22   the answer for this case.  So those are the things that I

23   would like you to meet and confer on.

24           Our policies and procedures for ADR indicate that

25   if you can't agree on a process or a neutral, then I will

1    name someone, but you all may have someone in mind that you

2    know that perhaps isn't local.  Maybe you've dealt with

3    people on a wider scale.

4           You know, it doesn't matter to me if you agree on

5    someone.  I'm glad to appoint that person.  So I didn't mean

6    to interrupt you, but I wanted to give you the scope of what

7    I would want from you.

8           MR. MacDOUGALL:  And you would need that mediator

9    identified rather quickly if it's going to be completed

10   within 60 days?

11          THE COURT:  Well, 60 days -- I differ I guess from

12   some of my colleagues.  Sixty days is not a drop dead time

13   limit for me.  I understand that these are -- you all have

14   huge practices, and probably the mediator you're going to

15   pick has a huge mediation practice.

16          So I recognize that 60 days might not be feasible.

17   It might not be.  So I would like to know the dates for the

18   discovery cutoffs perhaps before I leave, but the mediator,

19   if you can't come to that conclusion and you need some more

20   time to work on that, because that's an important decision

21   for both sides, and if you can't, you know, perhaps that can

22   wait until the week of July 23, and we can deal with that

23   either by phone or -- if you can't agree -- or by your

24   letting me know then, and I can get out the order then.

25          MR. MacDOUGALL:  Yes, Your Honor.  The only other

1    thing I would like to mention that I think is relevant to

2    discovery, particularly document discovery, is that one of

3    the benefits of the last four years of criminal

4    investigation is that all the parties -- I know I can speak

5    for Alba -- have an exhaustive and well indexed electronic

6    record of documents that have been collected.  I'm quite

7    sure Alcoa has the same.

8              So I would expect that those deadlines are

9    deadlines that we can roughly set in the relative near term

10   as opposed to having people going through boxes and doing it

11   traditionally.

12             THE COURT:  Thank you.

13             MR. McCLENAHAN:  Your Honor, Evan Chesler will be

14   speaking for Alcoa, and he's on the phone.  At least I

15   believe he is.

16             THE COURT:  Okay.  So Mr. Chesler, do you want to

17   speak about these topics?

18             MR. CHESLER:  Yes, Your Honor.  Thank you.  And

19   thank you, Your Honor, for the courtesy of letting us do

20   this by phone.  Unfortunately, we spent a lot of time today

21   on a runway and did not successfully ever leave the runway.

22   So we very much appreciate the courtesy of being able to do

23   this remotely.

24             THE COURT:  Surely.

25             MR. CHESLER:  With respect to the discovery

1    matter, I agree with Mr. MacDougall that there's no reason

2    why we cannot sit down either in person or by phone very

3    quickly and attempt to come up with an agreement as to the

4    cutoff dates that Your Honor's suggested, and we certainly

5    will undertake on our side to do that forthwith.

6              And if there is a disagreement, as Your Honor

7    indicated, we'll be able to come back to you to resolve it;

8    but we'll certainly endeavor to work to an agreed upon

9    cutoff date.

10             And also, we'll confer with counsel promptly with

11   respect to the mediation issue and see if we can't come up

12   with a mutually acceptable mediator for that purpose.  I'm

13   sure counsel has worked with many, as have we, and that

14   ought to be a topic that we can address promptly and have

15   our respective experiences inform us and hopefully come to

16   an agreement on that as well.

17             Your Honor, the only thing I would say is that in

18   the discovery process, given the number of people identified

19   in the pleadings who do not reside in the United States, the

20   challenge will be to try to figure out how to give us the

21   necessary time to seek and obtain the discovery we need with

22   respect to those people, but those are people who have been

23   identified in the Plaintiff's pleadings.

24             So presumably there won't be much trouble in

25   figuring out where they are and trying to use that

1    information to come to a mutually acceptable set of cutoff

2    dates that we can provide for the Court promptly.

3              THE COURT:  Okay.  And again, I recognize that

4    this isn't going to be something that -- you know, I want

5    this case to move quickly, but also not unreasonably as

6    well.  I want, you know, the information to be obtained that

7    you need, both sides need, and hopefully that will happen

8    without too much trouble.  But I don't know.  There could be

9    problems.

10             Generally I tell counsel in every case that before

11   any discovery motions are filed, I would want you to call

12   me.  Sometimes we just have you FAX a one-page position if

13   it's a difficult issue, you know, before the phone call.

14   Because I find that we can usually get those things resolved

15   immediately.  I don't know if that will work in this case.

16             You know, I'm hopeful that we won't have to do

17   anything extraordinary.  I think I will be able to handle

18   the discovery disputes unless they get to be, you know, out

19   of hand.  And I'm not expecting that because I think there's

20   been a lot of information already obtained.

21             So I'm hoping that that will happen.  But we'll

22   see as we move on.

23             But I still think that if there are issues with

24   discovery, it would be still beneficial for you to call

25   first before filing motions.  We want to try to keep that --

1    I would like to try to keep that down and make those

2    decisions immediately, and we always put in what the

3    substance of the dispute was and a decision so there's a

4    record of everything that happens.

5             MR. CHESLER:  We understand, Your Honor.  Thank

6    you.

7             THE COURT:  So let me think what else.  Anything

8    else that you all want to talk about?  I know some of you

9    came here.  Yes?

10            MR. BEIZER:  Your Honor, my name is Richard

11   Beizer, and with Amy Lee we represent Bill Rice, an

12   individual Defendant in this, and I would only build on what

13   Mr. Chesler said and what Mark MacDougall said.

14            Mark and I talked last week, counsel for Alba, and

15   just briefly Mark emphasized the point that he represented

16   Alba and not the Government of Bahrain; and along the lines

17   of what Mr. Chesler said, there are witnesses in foreign

18   countries who are not part of the party Plaintiff.  They are

19   from the Government of Bahrain, and they're identified in

20   the Complaint as having information pertaining to Mr. Rice.

21   So that's --

22            THE COURT:  And certainly they're not within my

23   jurisdiction.

24            MR. BEIZER:  Apparently not, Your Honor, and that

25   is one of the issues that I just wanted to call particularly

1   to the Court's attention --

2          THE COURT:  So how do you think we're going to

3   deal with that?  Because I would think that probably there

4   isn't -- maybe I'm wrong -- do you think there's going to be

5   a lot of cooperation from the Government?

6          MR. BEIZER:  I'm hard pressed to say that.  Having

7   read yesterday's article in the New York Times about

8   political unrest in Bahrain, I'm hard pressed to say what

9   the cooperation of the Government of Bahrain is as opposed

10  to Mark's client -- as opposed to Mr. MacDougall's client is

11  likely to be in the discovery.

12         All I note is that with respect to Mr. Rice, there

13  are allegations in the Complaint about his dealings with

14  people who are members of the Government or I should say

15  were members of the Government of Bahrain because our

16  information is seven, eight years old when Mr. Rice was last

17  involved in this matter.

18         So I just alert in that that may be a problem, but

19  let's see if we can accommodate it when we negotiate a case

20  management order.  But I wanted to alert the Court's

21  attention to that --

22         THE COURT:  And I mean I'm really not sure how

23  we'll ever solve that problem.  Any ideas, Mr. MacDougall?

24         MR. MacDOUGALL:  What I will be happy to represent

25  is that Alba will do all it can to encourage and facilitate

13

1   any material witness.

2           Now, Alba's a publicly traded company, and it has

3   a major shareholder that after three permutations as the

4   Government of Bahrain, but some of the officials, I think

5   one in particular that Mr. Beizer is referring to, I would

6   like to talk to, too, and haven't been able to.

7           THE COURT:  And may not be able to.

8           MR. MacDOUGALL:  Almost certainly won't because of

9   the nature of the allegations.  We're going to do everything

10  we can, but Mr. Beizer quite correctly points out that

11  our -- you know, our charter is limited, and that we will

12  certainly produce all our existing employees, but many of

13  the people involved in these allegations either are long

14  gone employees or never were employees at all.

15          MR. CHESLER:  Your Honor, this is Evan Chesler.  I

16  didn't want to interrupt anyone there.

17          THE COURT:  No.  It's fine, Mr. Chesler.  Go

18  ahead.

19          MR. CHESLER:  Thank you, Your Honor.  I appreciate

20  counsel's statement that he's going to do all he can to

21  facilitate it because obviously that's a matter of great

22  importance to Alcoa as well.

23          By my count at least, there are 23 people who are

24  non U.S.-based people who are identified specifically in the

25  Complaint and/or the RICO case statement; and as far as I

14

1    can tell, only two of those 23 appear to be current

2    employees of Alba, yet, you know, the other 20-odd are

3    alleged to have played important roles in the matters that

4    are alleged in the Complaint.

5              So it's going to be of great importance for our

6    ability to defend against the charges that we obtain

7    necessary discovery from those people, and I do appreciate

8    counsel's statement that he'll do what he can to facilitate

9    it, and hopefully that will help.

10             But at the end of the day we may have a difficult

11   problem to come back to the Court with if we do run into

12   those problems because, once the allegations are made, it's

13   our duty and responsibility to prepare to deal with them,

14   and we have to take the allegations as we see them and find

15   them in the Complaint and seek to take discovery to address

16   those matters.

17             So we're going to be hard at work at that, and

18   we'll do everything we can on behalf of Alcoa to expedite

19   that and obtain the information we need.

20             THE COURT:  I think it's going to be a problem.  I

21   don't know how -- I don't know how to solve it at this

22   point.  We'll deal with it when we have to.

23             Is there anything more?  You want to say

24   something, sir?

25             MR. ESSEKS:  Yes, David Esseks, representing

15

1  Victor Dahdaleh.  I want to raise two points, not about the

2  discovery management schedule, but two matters before that,

3  Your Honor.  They're linked.

4          One is concerning a 1292(b) certification request

5  that we will make of Your Honor regarding the personal

6  jurisdiction ruling that the Court issued a couple weeks

7  ago.  And related to that, we're going to ask Your Honor to

8  stay discovery of Mr. Dahdaleh pending resolution of the

9  criminal charges against him that are pending in London, and

10  trial is set currently for April 2013.

11          The first bit about 1292(b) certification, Your

12  Honor, is simply to tell the Court that we were going to

13  make this request of you.  We would like to schedule it on a

14  schedule convenient to Your Honor and Plaintiffs --

15          THE COURT:  I mean file it when you file it.

16          MR. ESSEKS:  We'll file --

17          THE COURT:  And I would assume that at least Alba

18  and maybe Alcoa as well would like to say something about

19  that -- I'm not sure, but I'm sure -- or not.

20          MR. MacDOUGALL:  Absolutely.

21          THE COURT:  I don't know.  Maybe even Alcoa.  No?

22          MR. McCLENAHAN:  I'll bow to Mr. Chesler, Your

23  Honor.

24          MR. CHESLER:  Your Honor, I'm sorry.  There were

25  two people talking at once, and I couldn't hear what you

1    just said.

2          THE COURT:  Well, go ahead.  You tell him.

3          MR. ESSEKS:  Mr. Chesler, I'm telling the Court

4    we're going to make a 1292(b) certification request

5    regarding the issue of personal jurisdiction over

6    Mr. Dahdaleh on a co-conspirator jurisdiction theory.

7          THE COURT:  And I inquired I assume that Alba

8    would like to say something about that, at least reply to

9    the motion in some fashion, and I thought perhaps maybe even

10   Alcoa.

11         MR. CHESLER:  Yes, Your Honor.  We certainly

12   want -- obviously we'll wait and see what the papers say,

13   but we certainly want to reserve the right to make a

14   statement about it at the appropriate time.  Thank you.

15         THE COURT:  Well, if the motion is filed, and I

16   assume it's going to be, and it's not only going to be a

17   motion for certification of an interlocutory appeal, but as

18   well as stay of discovery with respect to Mr. Dahdaleh.

19         So when it is filed, I don't know how much time

20   you might need to respond.  You can tell me if you want.  Or

21   you want to look at it first?

22         MR. CHESLER:  I would appreciate, Your Honor, if

23   we could look at it, and then if -- immediately within 24

24   hours of receiving it, we would submit a request to the

25   Court for a schedule on which to respond.

17

```
 1              THE COURT:  Okay.  That's fine.
 2              MR. MacDOUGALL:  No objection.
 3              MR. ESSEKS:  Your Honor.  Very good.  Thank you
 4    for the 1292(b) certification.  I wanted to know if the
 5    Court could hear -- I would like to address the discovery
 6    stay issue now at first --
 7              THE COURT:  Aren't you going to file a motion for
 8    the stay?
 9              MR. ESSEKS:  Your Honor, I was going to try and
10    talk Your Honor into it today.
11              THE COURT:  Well, I mean if you're going to file a
12    motion for an interlocutory appeal, I don't know, maybe -- I
13    don't know who all is prepared to respond to a stay for
14    Mr. Dahdaleh, but no, I think I probably want the motion and
15    the response on that.
16              MR. ESSEKS:  Very well, Judge.  We'll submit the
17    papers.  Thank you.
18              THE COURT:  Okay.  So that we have this clear, it
19    appears that Mr. Dahdaleh is going to be filing really one
20    motion asking for two things, for an interlocutory appeal
21    and -- for certification of an interlocutory appeal and for
22    a stay of discovery as it pertains to him, Mr. Dahdaleh.
23              And soon after getting the motion, Alcoa and Alba
24    are going to be sending me something quickly that says how
25    much time they need.  And you can -- you know, you can even
```

18

1   do this in a paper by FAX.  Does everyone have my FAX

2   number?  Okay.  You can do that.  Because it's really not a

3   pleading, saying how much time you need to respond.  So it

4   will be on record.

5           But just to expedite things, just FAX something to

6   me saying, look, I've looked at this motion of Mr. Dahdaleh,

7   and I think I need two weeks or three weeks or whatever you

8   think you need.

9           MR. BEIZER:  I know Your Honor has said Alcoa and

10  Alba can respond, but just to reserve for Mr. Rice --

11          THE COURT:  Absolutely.  And I did not mean to

12  exclude you.  So everybody would be involved in this.  You

13  would let me know for Mr. Rice then as well.

14          MR. BEIZER:  We will, Your Honor.

15          THE COURT:  Okay.  Does anybody else want to say

16  something today?  Well, I just want to say a few things

17  before I -- before we hang up just to make sure they're on

18  the record.

19          I know I told you at least one of these things in

20  2008, but a lot of things have passed since then.  I want to

21  make sure there's a record of this.  Although I am not

22  concerned about any of these things, I definitely want you

23  to know.

24          I want you to know that my father worked for

25  Alcoa, and I believe, as I said, I told you that in 2008, he

19

1    worked there from approximately 1939 to I would say 1971 or
2    1972.  He was a laborer in the factory in New Kensington.
3    He was not involved in any executive position.
4         Along that line, something I just thought of
5    actually, but I wanted you to know.  In nineteen -- well, 49
6    years ago I was named an Alcoa scholar.
7         Now, as it turned out, I did not take the money.
8    So I never got any money from Alcoa to go to college.  They
9    had some sort of rule that you couldn't have other
10   scholarships, and I had a full tuition scholarship.  So I
11   was in the -- I did not accept the Alcoa.  But I was named a
12   scholar and probably am in some old magazine as an Alcoa
13   scholar.
14        Thirdly, not that I think it pertains necessarily,
15   but because the Securities and Exchange Commission is
16   involved in some criminal investigations, I wanted you to
17   know that my son is employed by the SEC.  He is not in
18   enforcement in any respect.  He works for the general
19   counsel, and he does not get involved in any general
20   enforcement proceedings, so I wanted to just make sure that
21   those were matters that were on the record so that everyone
22   knows.
23        MR. CHESLER:  Evan Chesler, Your Honor.  Thank you
24   for that.  I do believe that as to the first two of those
25   matters, you informed all counsel back at the initial stage

1    of the litigation.  We thank you for putting all that on the

2    record.

3              THE COURT:  Yeah.  I thought I did, but I want to

4    make sure it's there again.  Again, I don't know that the

5    SEC thing pertains to this case, but I know it's out there.

6              Okay.  Anything more at all?

7              MR. MacDOUGALL:  Just a question if I may, Your

8    Honor.  Mr. Esseks' motion for interlocutory appeal and his

9    motion for stay of discovery, does the Court anticipate

10   that's going to affect the case management --

11             THE COURT:  No.  I do not.  I do not.  Now, if you

12   think, again -- well, I don't know how you're going to know

13   this.  But we do not normally in this court stay discovery

14   during the mediation process.  And I would not do this

15   unless you all called me and said, you know what, we're so

16   close, we don't want to spend this money.  Because let's

17   face it.  Enormous resources have been dedicated to this and

18   will continue to be.  And I understand that.

19             But normally, no, it would not.  Until I have

20   signed an order, if that happens, staying discovery with

21   respect to Mr. Dahdaleh, it does not happen.  Discovery goes

22   on.

23             And of course, I haven't entered an initial case

24   management order.  I would like to do that, you know.  I

25   think -- I would like to do that by July 5.  I would.

1              But again, I don't want to be unreasonable.  I

2     don't know how long it's going to take you to get together

3     to come up with this proposal.  I'm hoping you can do it by

4     then, but if you can't, you can't.  You know, I want this

5     case to move forward, but I don't want to be crazy about it.

6     I don't want to be unreasonable about it.

7              So again, if you can come up with something by

8     July 5, that would be great, and I'll sign it before I

9     leave.  Otherwise I'll be back on July 23, and I'll give my

10    immediate attention to it.

11             MR. MacDOUGALL:  Thank you, Your Honor.

12             MR. McCLENAHAN:  Thank you, Your Honor.

13             MR. CHESLER:  Thank you, Your Honor.

14             THE COURT:  Okay.  Anything more?  Can you think

15    of anything, Heidi?

16             THE CLERK:  No.

17             THE COURT:  Okay.  Thank you all very much.

18             MR. CHESLER:  Thank you, Your Honor.

19             MR. ESSEKS:  Have a good day, Judge.

20             (Proceedings were concluded at 2:27 p.m.)

21                              - - -

22                 C E R T I F I C A T E

23             I, Deborah Rowe, certify that the foregoing
      is a correct transcript from the record of proceedings in
24    the above-titled matter.

25    S/Deborah Rowe  _____
      Certified Realtime Reporter